UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

24-CV-02333 (PMH)

_____

PERL FELBERBAUM,

Plaintiff/Petitioner,

– against –

YAAKOV FELBERBAUM,

Defendant/Respondent.

_____

PETITIONER'S
MEMORANDUM OF LAW

_____

Law Office of Menachem White, PLLC
*Attorneys for Petitioner*
4 Brower Avenue, Suite 3
Woodmere, New York 11598
(516) 504-4101

## <u>TABLE OF CONTENTS</u>

Table of Authorities … iii

Jurisdictional Statement … 1

Statement of Facts … 1

    I.  Introduction … 1

    II.  Background … 1

    III. Ms. P.F.'s Hague Convention Claim … 4

        A.      Grave Risk of Harm Defense … 5

        B.      Sufficient Age and Maturity Defense … 6

        C.      Consent and/or Acquiescence Defense … 6

Argument … 7

    I.  RESPONDENT'S RETENTION OF THE CHILDREN IN 2023, WAS WRONGFUL UNDER THE HAGUE CONVENTION AND ENTITLES THE PETITIONER TO JUDGMENT IMMEDIATELY REPATRIATING THE CHILD TO TO ISRAEL … 7

        A.  B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE OF BIRTH SEPTEMBER 11, 2015 WAS A HABITUAL RESIDENT OF TO ISRAEL IMMEDIATELY PRIOR TO Y.F.'S WRONGFUL RETENTION OF THE CHILD IN THE UNITED STATES … 9

        B.  P.F. HAS RIGHTS OF CUSTODY WITH RESPECT TO B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE OF BIRTH SEPTEMBER 11, 2015 UNDER ISRAELI LAW … 11

        C.  AT THE TIME OF MR LARSON'S WRONGFUL RETENTION OF B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE OF BIRTH SEPTEMBER 11, 2015 IN THE UNITED STATES, P.F. WAS ACTUALLY EXERCISING RIGHTS OF CUSTODY AS TO THE CHILD OR WOULD HAVE BEEN EXERCISING SUCH RIGHTS BUT FOR THE WRONGFUL RETENTION … 12

        D.  Y.F. WRONGFULLY RETAINED B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE OF BIRTH SEPTEMBER 11, 2015 IN THE UNITED STATES WHEN HE FAILED TO RETURN THE CHILD TO ISRAEL ON SEPTEMBER 10, 2014 … 14

II.  A HAGUE CONVENTION ART. 13(B) "GRAVE RISK OF HARM" OR
     "INTOLERABLE SITUATION" DEFENSE TO REPATRIATION DOES NOT EXIST
     AS A MATTER OF LAW … 14

III. B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE OF BIRTH SEPTEMBER 11,
     2015 HAS NOT ATTAINED AN AGE AND DEGREE OF MATURITY AT WHICH IT
     IS APPROPRIATE TO TAKE ACCOUNT OF HIS VIEWS … 17

IV. P.F. DID NOT CONSENT TO B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE
    OF BIRTH SEPTEMBER 11, 2015'S WRONGFUL RETENTION IN THE UNITED
    STATES OR MANIFEST A SUBJECTIVE INTENT THAT HE REMAIN IN THE
    UNITED STATES THEREAFTER … 18

Conclusion … 19

## TABLE OF AUTHORITIES

### Cases

*Abbott v. Abbott*, 568 U.S. 1 (2010) ... 11

*Asvesta v. Petroutsas*, 580 F.3d 1000 (9th Cir. 2009) … 8

*Bader v. Kramer*, 484 F.3d 666 (4th Cir. 2007) … 13

*Baxter v. Baxter*, 423 F.3d 363 (3d Cir. 2005) … 12, 18

*Chafin v. Chafin*, 133 S.Ct. 1017 (2013) … 8

*Charalambous v. Charalambous*, No. 2:10-CV-375, 2010 WL 4115495 (D. Me. Oct. 12, 2010) … 16

*Chechel v. Brignol*, No. 5:10-CV-164-OC-10GRL, 2010 WL 2510391 (M.D. Fla. June 21, 2010) … 14

*Croll v. Croll*, 66 F. Supp. 2d 554 (S.D.N.Y. 1999) … 16

*Flynn v. Borders*, 472 F. Supp. 2d 906 (E.D. Ky. 2007) … 16

*Friedrich v. Friedrich*, 78 F.3d 1060 (6th Cir. 1996) … 12, 13

*Gitter v. Gitter*, 396 F.3d 124 (2d Cir. 2005) ... 9, 10

*Hollis v. O'Driscoll*, 739 F.3d 113 (2d Cir. 2014) … 19

*In re Kim*, 404 F. Supp. 2d 495 (S.D.N.Y. 2005) … 20

*Lockhart v. Smith*, No. 06-CV-160-P-S, 2006 WL 3091295 (D. Me. Oct. 20, 2006) … 16

*McManus v. McManus*, 354 F. Supp. 2d 62 (D. Mass. 2005) …16

*Mitsuing v. Lowry*, No. 4:09-CV-02124ERW, 2010 WL 1610418 (E.D. Mo. April 21, 2012) … 14

*Mota v. Castillo*, 692 F.3d 108 (2d Cir. 2012) … 18

*Nunez v. Ramirez*, No. CV07-01205-PHX-EHC, 2008 WL 898658 (D. Ariz. Mar. 28, 2008) … 16

*Santowsky v. Kramer*, 455 U.S. 745 (1982) … 16

*Sealed Appellant v. Sealed Appellee*, 394 F.3d 338 (5th Cir. 2004) … 13

*Simcox v. Simcox*, 511 F.3d 594 (6th Cir. 2007) … 17

*Souratgar v. Fair*, 720 F.3d 96 (2d Cir. 2013) … 15, 16, 17

*Tahan v. Duquette*, 259 N.J. Super. Ct. 328, 613 A.2d 486 (App. Div. 1992) … 17

*Tropea v. Tropea*, 87 N.Y.2d 727 (1996) … 9

*Walker v. Walker*, 701 F.3d 1110 (7th Cir. 2012) … 13

## Statutes & Treaties

Israeli Civil Code § 1662(1) … 11

Hague Convention on the Civil Aspects of Child Abduction, Oct. 25, 1980, 1343 U.N.T.S. 98, T.I.A.S. No. 11,670 ("Hague Convention") … 1

Hague Convention art. 3 … 14

Hague Convention art. 3(a) … 11

Hague Convention art. 6 … 11

Hague Convention art. 7 … 11

Hague Convention art. 11 … 19

Hague Convention art. 13 … 17

Hague Convention art. 13(a) … 18

Hague Convention art. 13(b) … 14

22 U.S.C. § 9001 … 7

22 U.S.C. §§ 9001-9011 … 1

22 U.S.C. § 9001(b)(4) … 8, 12

22 U.S.C. § 9003(a) … 1

22 U.S.C. § 9003(b) … 1

22 U.S.C. § 9003(e)(2)(A) … 15

22 U.S.C. § 9003(e)(2)(B) … 18

22 U.S.C. § 9007(b)(3) … 19

28 U.S.C. § 1331 ... 1

**<u>Other Authorities</u>**

American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (5th ed. 2013) … 3

Black's Law Dictionary (10th ed. 2014) … 15

N.Y. Pattern Jur. Instr. 1:64 (2014) … 16

U.S. Dept. of State, http://travel.state.gov/content/childabduction/english/country/hague-party-countries.html ... 7

## JURISDICTIONAL STATEMENT

The United States District Court has jurisdiction over this action pursuant to the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. §§ 9003(a), (b) and 28 U.S.C. § 1331.

## STATEMENT OF FACTS

### I.  Introduction

Plaintiff/Petitioner, Perl Felberbaum, commenced this action on March 27, 2024, pursuant to the Hague Convention on the Civil Aspects of Child Abduction, Oct. 25, 1980, 1343 U.N.T.S. 98, T.I.A.S. No. 11,670 ("Hague Convention"), as implemented by ICARA, 22 U.S.C. §§ 9001-9011, for judgment directing repatriation of her children, B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE OF BIRTH SEPTEMBER 11, 2015 (hereinafter referred to as "Children") to ISRAEL, where she and the Children had been permanently residing since 2019.

Plaintiff/Petitioner and the Children were residents of ISRAEL immediately prior to the unilateral retention of the Children within the State of New York by their father, Defendant/Respondent, at the conclusion of an agreed-upon visit between the parties herein which was supposed to be end of April, 2023.

### II.  Background

A. The Parties

1.      The Petitioner, Perl Felberbaum, was born in Israel, and is a citizen of Israel.

2.      The Petitioner resides at 39 Ezrat Street, Bnei Brak, Israel.

3.      Upon information and belief, the Respondent, Yaakov Felberbaum, was born in Brooklyn, New York, and is a citizen of the United States.

4.      Upon information and belief, the Respondent currently resides at 80 Meron Road, Monsey, New York 10952.

5.      The Petitioner and Respondent were married in the city of Bnei Brak, Israel on November 2, 2011. Annexed hereto as **Exhibit A** is the Marriage Certificate of the parties.

6.      Petitioner and Respondent are the natural parents of the Children who were born in New York. Annexed hereto as **Exhibit B** are the Birth Certificates of the children.

7.      The Children's' Habitual Residence was in Israel prior to Respondent's Wrongful Retention of the Children in New York.

8.      The Respondent took the Children to New York in April, 2023 for Passover holiday and has refused to return the Children to Israel since then. The Respondent and the Children were supposed to return before April 18, 2023.

9.      From 2019 until the wrongful retention of the Children by Respondent, they habitually resided with the Petitioner in Bnei Brak, Israel.

10.     The Hague Convention applies where a child under the age of sixteen (16) years has been removed from his or her habitual residence in breach of rights of custody of a petitioner, which the petitioner had been exercising at the time of the wrongful removal or wrongful retention of the child. Convention, Article 4.

11.     B.F., Date of Birth May 1, 2014 is now nine (9) years old and M.F., Date of Birth September 11, 2015, is now eight (8) years old.

12.     Prior to the wrongful retention of the Children by Respondent within the State of New York commencing in April, 2023, the Children were habitual residents of Israel within the meaning of the Hague Convention, residing with their natural mother in Bnei Brak, Israel.

13.     Petitioner has valid rights and custody over the Children under Israel law.

14.     Petitioner was exercising valid rights of custody over her Children in Bnei Brak, Israel, within the meaning of Articles Three and Five of the Hague Convention, prior to the wrongful retention of the Children by Respondent in New York commencing in April. 2023.

15.     Petitioner agreed to allow the Children to visit New York with the Respondent in March, 2023, with the agreement that Respondent would return the Children back to Petitioner in Bnei Brak, Israel in April, 2023.

16.     Respondent has wrongfully retained the Children in the United States in violation of the Hague Convention, and has failed to return the Children back to the Petitioner at the end of April, 2023 as agreed, notwithstanding Petitioner's requests.

17.     Respondent continues to wrongfully retain the Children in the United States, more specifically within the State of New York, despite requests and efforts on Petitioner's part to have the Children returned to Israel.

18.     Respondent also continues to wrongfully obstruct Petitioner's access to the Children in New York.

19.     Petitioner filed an Application with the Central Authority of the Official Solicitor's Office in Israel on November 15, 2023, requesting that the Central Authority act on Petitioner's behalf to secure the return of the Children to Petitioner in Israel. Annexed hereto as **Exhibit C** is the application of the Petitioner.

20.     The International Child Abduction and Contact Unit of the Official Solicitor's Office in Bnei Brak, Israel issued a letter directed to the United States Department of State, Office of Children's Issues, on November 15, 2023, transmitting Petitioner's Application. Annexed hereto as **Exhibit D** is the letter sent to the United States Department of State.

21.    Respondent has frustrated Petitioner's efforts to secure the return of the Children to Israel, by relocating without providing notice to Petitioner of Respondent's intentions to do so.

22.    Respondent has further acted to obstruct and restricted Petitioner's telephone communications with the Children including by recently disconnecting the telephone number Petitioner was using to communicate with the Children.

23.    Upon information and belief, Respondent and the Children are currently residing at 80 Meron Road, Monsey, New York 10952, within the State of New York, County of Rockland.

24.    Pursuant to Article 12 of the Convention, [w]here a child has been wrongfully removed or retained in terms of Article 3 and, at the date of the commencement of the proceedings before the judicial or administrative authority of the Contracting State where the child is, a period of less than one year has elapsed from the date of the wrongful removal or retention, the authority concerned shall order the return of the child forthwith.

25.    Less than one year has elapsed from the date of the Respondent's wrongful retention of the Children which was beginning on or about April 7, 2023 and the initiation of this proceeding.

26.    Respondent has wrongfully retained the Children in the United States away from the Children's habitual country of residence, without Petitioner's consent or permission, and in violation of the valid rights of custody of Petitioner.

27.    Petitioner is also being denied access to her Children in violation of the Hague Convention in addition to Respondent's wrongful retention of the Children within the State of New York in violation of the Hague Convention.

### III.  <u>Perl Felberbaum's Hague Convention Claim</u>

Perl Felberbaum bases her Hague Convention claim for the Children's repatriation to ISRAEL on the above.  Specifically, she contends that, at the time Defendant/Respondent retained the Children in New York State (i) Perl Felberbaum had established ISRAEL as the Children 's permanent home, (ii) Perl Felberbaum had rights of custody to the Children under Israeli law, (iii) Perl Felberbaum was exercising  her right to custody of the Children under Israeli law, and (iv) Yaakov Felberbaum breached Perl Felberbaum's rights of custody, when he wrongfully retained the Children in the United States on or about April, 2023, contrary to the parties' prior agreement.

## <u>ARGUMENT</u>

**I.  DEFENDANT/RESPONDENT'S RETENTION OF THE CHILDREN IN THE UNITED STATES in April, 2023, WAS WRONGFUL UNDER THE HAGUE CONVENTION AND ENTITLES PLAINTIFF/PETITIONER TO JUDGMENT IMMEDIATELY REPATRIATING THE CHILDREN TO TO ISRAEL**

The Hague Conference on Private International Law adopted the Hague Convention on the Civil Aspects of International Child Abduction in 1980.  T.I.A.S. No. 11670, S. Treaty Doc. No. 99–11.  In 1988, the United States ratified the treaty and passed implementing legislation, known as the International Child Abduction Remedies Act (ICARA), 102 Stat. 437, [22] U.S.C. § [9001] *et seq.*

*Chafin v. Chafin*, 133 S.Ct. 1017, 1021 (2013).  The United States and TO ISRAEL have been treaty partners under the Hague Convention since December 1, 1990.  U.S. Dept. of State,

http://travel.state.gov/content/childabduction/english/country/hague-party-countries.html (last visited Mar. 7, 2015).

The goal of the Hague Convention is to regulate the transnational relocation of children without the consent of the other parent, "to secure the prompt return of children wrongfully removed to or retained in any Contracting State and to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." *Chafin*, 133 S.Ct. at 1021 (citations omitted).

> Article 3 of the Convention provides that the removal or the retention of a child is to be considered wrongful when it is in breach of rights of custody attributed to a … [parent], either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention and at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

*Id.* (citations and quotation marks omitted).

To be sure, the Hague Convention is not a vehicle for determining relative parental fitness and custody rights or enforcing custody decrees rendered by a foreign country. ICARA, 22 U.S.C § 9001(b)(4) ("The [Hague] Convention … empower[s] courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody claims."); *e.g.*, *Asvesta v. Petroutsas*, 580 F.3d 1000, 1017 (9th Cir. 2009) ("[I]t is the State of habitual residence to which the child should be returned and where the ultimate merits of the custody fight are to be decided.") (citation omitted). Following repatriation, the abducting parent may commence custody litigation in the country to which repatriation is ordered; but the court

directing repatriation is entirely without subject matter jurisdiction to address issues of custody, the abducting parent's ultimate right to relocate the child's residence,[1] and the child's best interests.

Under the Hague Convention and ICARA, P.F.'s cause of action for repatriation of the Children to ISRAEL is warranted because her situation meets four specific foundational requirements for repatriation:

1. The Children were habitual residents of ISRAEL immediately prior to April 2023 when Defendant/Respondent failed to return the Children to ISRAEL as previously agreed;

2. Under Israeli law, Petitioner has rights of custody to the Children including rights relating to the care of the Children including the right to determine the Children's place of residence;

3. Defendant/Respondent wrongfully retained the Children in the United States when he failed to return the Children to ISRAEL in April of 2023; and

4. Perl Felberbaum was exercising rights of custody to the Children at the time of the Children's wrongful retention in the United States or would have exercised such rights but for the retention.

Each element of Perl Felberbaum s cause of action for repatriation and the expected evidence in support of the same is addressed *in seriatim* below.

**A. THE CHILDREN WERE HABITUAL RESIDENTS OF ISRAEL IMMEDIATELY PRIOR TO DEFENDANT/RESPONDENT'S WRONGFUL RETENTION OF THE CHILDREN IN THE UNITED STATES**

---

[1] The right to relocate with a child is a component of state law custody jurisprudence. *See*, *e.g.*, *Tropea v. Tropea*, 87 N.Y.2d 727 (1996).

Existing Second Circuit law defining the child's "state of habitual residence" was established in *Gitter v. Gitter*, 396 F.3d 124 (2d Cir. 2005). *Gitter* creates a two-part analysis for determining habitual residence. First, the court must first determine – as a "primary consideration" – the "shared intent of those entitled to fix a child's residence (usually the parents) at the latest time that their intent was shared." *Id.* at 134. In this regard, the child's actual location is relevant, but the parents' actual intent controls. Thus, a child might be physically present in a particular location but the child's presence at a particular location is intended by the parents to be temporary. In determining the parents' shared intent, the court is required to consider evidence of their "actions and declarations", i.e., what they did and what they said. *Id.*

Second, notwithstanding the parents' intent, the court must consider "whether the evidence unequivocally points to the conclusion that the child [has become] acclimated to [another] location …." *Id.* In other words, the reality can *possibly* trump the parents' shared intent. By way of illustration, in *Gitter* the Second Circuit wrote:

> We would be hard pressed to conclude, for example, that a child who has spent fifteen years abroad in the same State is not habitually resident there, even if the parents intended some day to [have the child] return and did not intend that the child acquire a new habitual residence.

*Id.* at 133.

In the present case, there can be no dispute that the Children s state of habitual residence was, and continues to be, ISRAEL. The parties shared intent can be inferred by (i) the history of their relationship, i.e., that Perl Felberbaum had *de facto* decision-making authority concerning where she and the Children would live;

Thus, the parties' last shared intent and agreement was that Perl Felberbaum would have authority to determine all custodial matters, including where the Children would reside. On that basis Perl Felberbaum established ISRAEL as the Children's "state of habitual residence" in 2019.

Finally, no serious claim can be made that the Children hava somehow become "acclimated" to the United States within the short time they have been here

### B.  PERL FELBERBAUM HAS RIGHTS OF CUSTODY WITH RESPECT TO THE CHILDREN UNDER ISRAELI LAW

As stated, a "removal or … retention of a child is … wrongful" if it is in "breach of rights of custody attributed to [a parent] …, either jointly or alone, under the law of the state … [of] the [child's habitual residence]." Hague Convention art. 3(a). "This uniform, text-based approach ensures international consistency in interpreting the [Hague] Convention, foreclosing courts from relying on local usage to undermine recognition of custodial arrangements in other countries and under other legal traditions." *Abbott v. Abbott*, 560 U.S. 1, 2-3 (2010).

Israeli Civil Code § 1662(1), gives Perl Felberbaum rights of custody as to the Children. Additionally, under Israeli law, Defendant's determination to change the Children's residence to the United States last April of 2023 could not have been legally effective unless both parties had previously agreed to the change.

## C. AT THE TIME OF DEFENDANT'S WRONGFUL RETENTION OF THE CHILDREN, PERL FELBERBAUM WAS ACTUALLY EXERCISING RIGHTS OF CUSTODY AS TO THE CHILDREN OR WOULD HAVE BEEN EXERCISING SUCH RIGHTS BUT FOR THE WRONGFUL RETENTION

Perl Felberbaum must establish that she actually was exercising his rights of custody at the time of the Children's retention in New York, or that she would have exercised those rights but for the Children's wrongful retention. The Hague Convention does not define the phrase "actual exercise."

The leading case defining the actual exercise of rights of custody is *Friedrich v. Friedrich*, 78 F.3d 1060 (6th Cir. 1996). As explained in *Friedrich*:

> [I]f a person has valid custody rights to a child under the law of the country of the child's habitual residence, that person cannot fail to "exercise" those custody rights under the Hague Convention short of acts that constitute clear and unequivocal abandonment of the child. Once it determines that the parent exercised custody rights in any manner, the court should stop-completely[,] avoiding the question whether the parent exercised the custody rights well or badly. These matters go to the merits of the custody dispute and are, therefore, beyond the subject matter jurisdiction of the federal courts.

*Id.* at 1066 (citing ICARA, re-codified at 22 U.S.C. § 9001(b)(4)).

The Second Circuit has not addressed the "exercise of custody rights" issue.  However, other circuits have followed the analysis in *Friedrich*, holding that maintaining any sort of relationship with the child is sufficient.  For example:

- *In Baxter v. Baxter*, 423 F.3d 363 (3d Cir. 2005), the Third Circuit emphasized that the test for finding the non-exercise of custody rights under the Hague Convention is stringent.  The only acceptable solution, in the absence of a ruling from a court in the country of habitual residence, is to liberally find 'exercise' whenever a parent with *de jure* custody rights keeps, or seeks to keep, any sort of regular contact with his or her child …."

   *Id.* at 370 (quotation marks omitted) (citing *Friedrich*).

- The Fourth Circuit followed suit in *Bader v. Kramer*, 484 F.3d 666 (4th Cir. 2007), holding that

   we find persuasive the nearly-universal approach taken by courts faced with the question of the exercise of custody rights, and we adopt it here.  Accordingly, we will liberally find 'exercise' whenever a parent with *de jure* custody rights keeps, or seeks to keep, any sort of regular contact with his or her child.

   *Id.* at 671 (quotation marks omitted) (citing *Friedrich*).

- The Fifth Circuit held likewise in *Sealed Appellant v. Sealed Appellee*, 394 F.3d 338 (5th Cir. 2004), stating that "the district court erred in its conclusion that … [the] Father was *not* exercising his custody rights.  At the district court hearing, Mother conceded Father

visited the children about five times a year and paid child support to her." *Id.* at 345 (citing *Friedrich).*

- To the same effect is *Walker v. Walker*, 701 F.3d 1110 (7th Cir. 2012), in which the Seventh Circuit held that

> courts will generally find exercise whenever a parent with *de jure* custody rights keeps, or seeks to keep, any sort of regular contact with his or her child. Indeed, a person cannot fail to 'exercise' [his] custody rights under the Hague Convention short of acts that constitute clear and unequivocal abandonment of the child.

> As the Sixth Circuit has explained [in *Friedrich*], sound policy reasons support this liberal standard. U.S. courts are not well equipped to determine whether the courts of a child's habitual residence would conclude that a parent with *de jure* custody rights has nevertheless forfeited those rights because he or she was not acting sufficiently like a custodial parent. Moreover, any determination that a parent has failed to behave in a sufficiently parent-like fashion comes dangerously close to an adjudication on the merits of the parents' custody dispute, which (to repeat) is something the Convention expressly reserves for the courts of the child's habitual residence. Finally, the confusing dynamics of domestic strife make it difficult to assess adequately the acts and motivations of a parent.

> *Id.* at 1121 (citations and quotation marks omitted) (citing *Friedrich*).

Perl Felberbaum was the Children's full-time caretaker.  Under the *Friedrich* analysis, she was indisputably exercising rights to custody as to the Children at all relevant times as a matter of law.  Any claim by Defendant/Respondent that Perl Felberbaum was not exercising rights of custody would be specious and without any basis whatsoever in fact or law.

## D. DEFENDANT/RESPONDENT WRONGFULLY RETAINED THE CHILDREN IN THE UNITED STATES WHEN HE FAILED TO RETURN THE CHILDREN TO ISRAEL IN APRIL 2023

The Hague Convention expressly proscribes a child's wrongful "removal" from his or her state of habitual residence or "retention" in a foreign country.  Hague Convention art. 3.  A wrongful retention in a foreign country takes place when the left-behind parent consents to an overseas visit or trip for a specific period but not to a permanent removal.  "[T]he wrongful retention begins when the agreed date [of return] passes …."  *Chechel v. Brignol*, No. 5:10-CV-164-OC-10GRL, 2010 WL 2510391, at *7 (M.D. Fla. June 21, 2010) (citations omitted); *see also*, *e.g.*, *Mitsuing v. Lowry*, No. 4:09-CV-02124ERW, 2010 WL 1610418, at *10 n.5 (E.D. Mo. April 21, 2012) ("The Court notes that Mother is asserting wrongful retention in violation of the Hague Convention, and not wrongful removal.  This is presumably because when C.L. was removed from Canada to the United States by Grandfather and Grandmother, they had the express permission of both Mother and Father.").

Here, Perl Felberbaum consented to the Children visiting New York for Passover in 2023 to be returned end of April of 2023.  When Respondent failed to return the Children's  wrongful retention in the United States began.

## II.  A HAGUE CONVENTION ART. 13(B) "GRAVE RISK OF HARM" OR

   "INTOLERABLE SITUATION" DEFENSE TO REPATRIATION DOES NOT

   EXIST AS A MATTER OF LAW

The Hague Convention art. 13(b) sets forth a limited affirmative defense to repatriation, where "there is a grave risk that [the child's] return [to the state of habitual residence] would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation."  The affirmative defense must be established by clear and convincing evidence. ICARA, 22 U.S.C. § 9003(e)(2)(A).

As recently explained by the Second Circuit:

[A] grave risk of harm from repatriation arises in two situations: (1) where returning the child means sending him to a zone of war, famine, or disease; or (2) in cases of serious abuse or neglect, or extraordinary emotional dependence, when the court in the country of habitual residence, *for whatever reason,* may be incapable or unwilling to give the child adequate protection.  The potential harm to the child must be severe, and the the [sic] level of risk and danger required to trigger this exception has consistently been held to be very high.  The grave risk involves not only the magnitude of the potential harm but also the probability that the harm will materialize.

This 'grave risk' exception is to be interpreted narrowly, lest it swallow the rule. … [P]ermissive invocation of the affirmative defenses would lead to the collapse of the whole structure of the Convention by depriving it of the spirit of mutual confidence which is its inspiration.

*Souratgar v. Fair*, 720 F.3d 96, 103 (2d Cir. 2013) (emphasis in original) (quotation marks, brackets and citations omitted).

Here, Defendant/Respondent will no doubt argue that Perl Felberbaum is an unfit parent. Perl Felberbaum inherently denies these allegations.  Any negative stories by the Children about the care they received in ISRAEL, even if true, do not constitute clear and convincing evidence[2] of "potential harm to [the Children] [that is] … severe … [in terms of the] magnitude of the potential harm but also the probability that the harm will materialize."  *Id.* at 103.  "Sporadic or isolated incidents of physical discipline directed at the child … have not been found to constitute a grave risk."  *Id*. at 104 (citations omitted).

District courts across the country have engaged in the same analysis, emphasizing the high level of proof required to establish an art. 13(b) "grave risk of harm" defense and rejecting the defense based on alleged child abuse or neglect that can be addressed in the child's state of habitual residence.  *E.g.*, *Charalambous v. Charalambous*, No. 2:10-CV-375, 2010 WL 4115495, at *10 (D. Me. Oct. 12, 2010), *aff'd*, 627 F.3d 462 (1st Cir. 2010) (holding that striking child on multiple occasions with a wooden spoon and imposing physical discipline by pulling child's ear, did not constitute a grave risk of harm); *Nunez v. Ramirez*, No. CV07-01205-PHX-EHC, 2008 WL 898658, at *5 (D. Ariz. Mar. 28, 2008) (same – striking children "on different occasions, including striking them with a belt"); *Flynn v. Borders*, 472 F. Supp. 2d 906, 912-14 (E.D. Ky. 2007) (same – abuse of alcohol, slapping child "from time to time" and speaking to

---

[2] "Clear and convincing evidence is defined as "[e]vidence indicating that the thing to be proved is highly probable ….," Black's Law Dictionary (10th ed. 2014), and "conveys to the fact-finder the [higher] level of subjective certainty about his factual conclusions necessary to satisfy due process," *Santosky v. Kramer*, 455 U.S. 745, 769 (1982).  *See also* N.Y. Pattern Jury Instr. Civil 1:64 (2014) ("The burden is on the plaintiff to prove [the facts at issue] … by clear and convincing evidence.  This means evidence that satisfies you that there is a high degree of probability [as to the facts you determine].").

child in degrading tone); *Lockhart v. Smith*, No. 06-CV-160-P-S, 2006 WL 3091295, at \*3-\*4 (D. Me. Oct. 20, 2006) (same – spanking and forcing child to watch "scary movies"); *McManus v. McManus*, 354 F. Supp. 2d 62, 69-70 (D. Mass. 2005) (same – subjecting children to physical discipline and psychological distress); *Croll v. Croll*, 66 F. Supp. 2d 554, 562 (S.D.N.Y. 1999), *rev'd on other grounds*, 229 F.3d 133 (2d Cir. 2000) (same - red handprint mark on her daughter's thigh apparently caused by the other parent).

Finally and as emphasized in *Souratgar*, a grave risk of harm, if any, can only exist if the allegations made against Perl Felberbaum concerning impaired parenting abilities are both "true and incapable of redress by the Israeli courts and child welfare authorities." *See Souratgar*, 720 F.3d at 104. But, as noted, the Israeli courts are fully equipped to address any of these issues. To the extent Defendant/Respondent's allegations could be proved to have any merit and might support a request a transfer of the Children's custody to Defendant/Respondent in New York, he would have to present his evidence on this issue to a Israeli court with jurisdiction over issues involving child custody. *See supra* note 1 and accompanying text.

### III. THE CHILDREN HAVE NOT ATTAINED AN AGE AND DEGREE OF MATURITY AT WHICH IT IS APPROPRIATE TO TAKE ACCOUNT OF THEIR VIEWS

Hague Convention art. 13 allows a court to refuse repatriation if it finds as a factual matter that "the child objects to being returned and has obtained an age and degree of maturity at which it is appropriate to take account of its views." In that regard, art. 13 expressly requires the court to consider the child's "social background" – which would include evidence provided by the neutral forensic mental health professional, Richard G. Dudley, Jr., M.D.

The Hague Convention does not set forth a specific age at which a child's objection either should or should not be considered, although the New Jersey Appellate Division has held that the maturity exception "simply does not apply to a nine-year-old." *Tahan v. Duquette*, 259 N.J. Super. 328, 335, 613 A.2d 486, 490 (N. J. Super. Ct. App. Div. 1992); *but see*, *e.g.*, *Simcox v. Simcox*, 511 F.3d 594, 604 (6th Cir. 2007) (holding otherwise with respect to an eight-year-old). The Sixth Circuit has noted that the inquiry is "fact-intensive[,] … idiosyncratic [and results in] decisions … [that] are understandably disparate." *Id.* at 604.

The "age and maturity" defense must be established by a preponderance of the evidence. 22 U.S.C. § 9003(e)(2)(B).

Here, the court should not conclude that the Children B attained an age and degree of maturity at which their views on staying in the United States (or their statements, if any, on any other issue) should be taken seriously.

## IV. PERL FELBERBAUM DID NOT CONSENT TO THE CHILDREN'S WRONGFUL RETENTION IN THE UNITED STATES OR MANIFEST A SUBJECTIVE INTENT THAT THEY REMAIN IN THE UNITED STATES THEREAFTER

"[A] district court is not bound to return a wrongfully removed or retained child if the respondent demonstrates by a preponderance of the evidence that the petitioner had consented to or subsequently acquiesced in the removal or retention." *Mota v. Castillo*, 692 F.3d 108, 117 (2d Cir. 2012) (citing Hague Convention, art. 13(a) and ICARA, re-codified at *22* U.S.C. § 9003(e)(2)(B)). The issue is "the subjective intent of the parent who is claimed to have

acquiesced." *Baxter*, 423 F.3d at 371; *accord In re Kim*, 404 F. Supp. 2d 495, 516-17 (S.D.N.Y. 2005).

Here Perl Felberbaum clearly stated that the Children were only to come to New York for Passover and thereafter returned home to Israel.

Regardless, the parties communicated and discussed about the return of the Children

Given all of the above and viewed in context, there is nothing to justify a conclusion that Perl Felberbaum ever intended to waive her rights under the Hague Convention.

## <u>CONCLUSION</u>

Perl Felberbaum's Petition for repatriation of the Children to ISRAEL, pursuant to the Hague Convention, should be granted "expeditiously."  Hague Convention art. 11.  This would simultaneously protect the Children's interest in having the courts in ISRAEL – their state of habitual residence – determine the parties' underlying custody dispute and vindicate important treaty obligations of the United States concerning children, such as the Children, who are wrongfully retained in the United States.  As detailed above, Defendant/Respondent cannot establish a basis for proceeding otherwise.

In addition, Perl Felberbaum is presumptively entitled to an award for the reasonable "costs and fees" she incurred in prosecuting this action.  ICARA, 22 U.S.C. § 9007(b)(3) ("Any court ordering the return of a child pursuant to … section 11603 of this title *shall order* the respondent to pay necessary expenses incurred by … the petitioner, including court costs, [and] legal fees[] … during the course of … the action, and transportation costs related to the return of the child, *unless the respondent establishes that such order would be clearly inappropriate*.") (emphasis added).

"The District Court, as the court ordering the return of the child, is responsible in the first instance for determining what costs, if any, should be assessed" at the end of the case and after any appellate remedies are exhausted.  *Hollis v. O'Driscoll*, 739 F.3d 108, 113 (2d Cir. 2014). P.F. will seek such an award at the appropriate time.

Dated: Woodmere, New York

      June 21, 2024

              Law Office of Menachem White

              By _____
                 Aleksandr Khutoryansky

              *Attorneys for Plaintiff/Petitioner*
              4 Brower Avenue, Suite 3
              Woodmere, New York 11598
              (516) 504-4101
              akhuto@gmail.com