UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

15 CV 122 (PAE)

———————————————

P.F.,

Plaintiff,

– against –

Y.F.,

Defendant.

———————————————

PLAINTIFF'S
MEMORANDUM OF LAW

———————————————

Law Office of Menachem White, PLLC
*Attorneys for Plaintiff*
4 Brower Avenue, Suite 3
Woodmere, New York 11598
(516) 504-4101

<u>TABLE OF CONTENTS</u>

Table of Authorities … 2

Jurisdictional Statement … 6

Statement of Facts … 6

    I.  Introduction … 6

    II.  Background … 6

    III. Ms. P.F.'s Hague Convention Claim … 11

        A.        Sufficient Age and Maturity Defense … 6

        B.        Consent and/or Acquiescence Defense … 6


Argument … 7

    I.  DEFENDANT'S RETENTION OF THE CHILDREN IN 2023, WAS WRONGFUL UNDER THE HAGUE CONVENTION AND ENTITLES THE PLAINTIFF TO JUDGMENT IMMEDIATELY REPATRIATING THE CHILDREN TO ISRAEL … 7

        A. B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE OF BIRTH SEPTEMBER 11, 2015 WAS A HABITUAL RESIDENT OF TO ISRAEL IMMEDIATELY PRIOR TO Y.F.'S WRONGFUL RETENTION OF THE CHILDREN IN THE UNITED STATES … 15

        B. P.F. HAS RIGHTS OF CUSTODY WITH RESPECT TO B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE OF BIRTH SEPTEMBER 11, 2015 UNDER ISRAELI LAW … 16

        C. AT THE TIME OF Y.F.'S WRONGFUL RETENTION OF B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE OF BIRTH SEPTEMBER 11, 2015 IN THE UNITED STATES, P.F. WAS ACTUALLY EXERCISING RIGHTS OF CUSTODY AS TO THE CHILDREN OR WOULD HAVE BEEN EXERCISING SUCH RIGHTS BUT FOR THE WRONGFUL RETENTION … 17

        D. Y.F. WRONGFULLY RETAINED B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE OF BIRTH SEPTEMBER 11, 2015 IN THE UNITED STATES WHEN HE FAILED TO RETURN THE CHILDREN TO ISRAEL IN APRIL, 2023 … 20

II.  P.F. DID NOT CONSENT TO B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE OF BIRTH SEPTEMBER 11, 2015'S WRONGFUL RETENTION IN THE UNITED STATES OR MANIFEST A SUBJECTIVE INTENT THAT HE REMAIN IN THE UNITED STATES THEREAFTER … 21\

III. Default Should be granted to Plaintiff against Defendant … 21

IV. Defendant should be responsible for attorneys fees and costs along with any costs for returning the children to Israel …. 24

Conclusion … 25

## TABLE OF AUTHORITIES

Cases

*Abbott v. Abbott*, 568 U.S. 1135 (2010) ... 16

Aguirre v. Calle, 2008 WL 4461931, (EDNY, 2008) … 22

*Asvesta v. Petroutsas*, 580 F.3d 1000 (9th Cir. 2009) … 13

*Bader v. Kramer*, 484 F.3d 666 (4th Cir. 2007) … 18

*Baxter v. Baxter*, 423 F.3d 363 (3d Cir. 2005) … 18, 21

*Chafin v. Chafin*, 133 S.Ct. 1017 (2013) … 12

*Chechel v. Brignol*, No. 5:10-CV-164-OC-10GRL, 2010 WL 2510391 (M.D. Fla. June 21, 2010) … 20

*Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) … 22

*Finkel v. Romanowicz,* 577 F.3d 79 (2d Cir., 2009) … 21

*Friedrich v. Friedrich*, 78 F.3d 1060 (6th Cir. 1996) … 17, 18, 19

*Gitter v. Gitter*, 396 F.3d 124 (2d Cir. 2005) ... 15, 22

*Hollis v. O'Driscoll*, 739 F.3d 113 (2d Cir. 2014) … 22, 25

*Hosseinzadeh v. Green Point Mortg. Funding, Inc.*, 577 F. App'x 925, 929 (11th Cir. 2014) … 22

*In re Kim*, 404 F. Supp. 2d 495 (S.D.N.Y. 2005) … 21

*Laguna,* 2008 WL 1986253, (EDNY, 2008)

*Laguna,* 2008 WL 1986253, (EDNY, 2008) … 23

Llanso v. Rivers, Slip Copy2024 WL 776021 (SDFL, 2024) … 22

*Mitsuing v. Lowry*, No. 4:09-CV-02124ERW, 2010 WL 1610418 (E.D. Mo. April 21, 2012) … 20

*Mota v. Castillo*, 692 F.3d 108 (2d Cir. 2012) … 21

*Mierzwicki v. CAB Asset Mgmt., LLC*, No. 14-61998, 2014 WL 12488533, at *1 (S.D. Fla. Dec. 30, 2014) … 22

*Sealed Appellant v. Sealed Appellee*, 394 F.3d 338 (5th Cir. 2004) … 13

*Sims v. Blot,* 534 F.3d 117, 132 (2d Cir., 2008) … 21

*Tropea v. Tropea*, 87 N.Y.2d 727 (1996) … 13

*Walker v. Walker*, 701 F.3d 1110 (7th Cir. 2012) … 19

*Villegas Duran v. Arribada Beaumont,* 534 F.3d 142, 147 (2d Cir.2008) … 22

Statutes & Treaties

Israeli Civil Code § 1662(1) … 16

Hague Convention on the Civil Aspects of Child Abduction, Oct. 25, 1980, 1343 U.N.T.S. 98, T.I.A.S. No. 11,670 ("Hague Convention") … 6

Hague Convention art. 3 … 16

Hague Convention art. 3(a) … 20

Hague Convention art. 11 … 21

28 U.S.C. §1331 … 6

22 U.S.C. § 9001 … 18

22 U.S.C. §§ 9001-9011 … 6

22 U.S.C. § 9007(b)(3) … 25

22 U.S.C. § 9001(b)(4) … 18

22 U.S.C. § 9003(e)(2)(B) … 21

42 U.S.C. § 11603(e)(1)(A) … 22

Other Authorities

U.S. Dept. of State, http://travel.state.gov/content/childabduction/english/country/hague-party-countries.html ... 12

## JURISDICTIONAL STATEMENT

The United States District Court has jurisdiction over this action pursuant to the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. §§ 9003(a), (b) and 28 U.S.C. §1331.

## STATEMENT OF FACTS

**I.** Introduction

Plaintiff, "P.F.", commenced this action on March 27, 2024, pursuant to the Hague Convention on the Civil Aspects of Child Abduction, Oct. 25, 1980, 1343 U.N.T.S. 98, T.I.A.S. No. 11,670 ("Hague Convention"), as implemented by ICARA, 22 U.S.C. §§ 9001-9011, for judgment directing repatriation of her children, B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE OF BIRTH SEPTEMBER 11, 2015, to ISRAEL, where she and B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE OF BIRTH SEPTEMBER 11, 2015 had been permanently residing.

P.F. and B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE OF BIRTH SEPTEMBER 11, 2015 were residents of ISRAEL immediately prior to the unilateral retention of the child in New York by their father, Defendant Y.F. ("Y.F."), at the conclusion of an agreed-upon visit by the children, in April, 2023.

**II.** Background

A. The Parties

1. The Plaintiff, P.F., was born in Israel, and is a citizen of Israel.

2. The Plaintiff resides at 39 Ezrat Street, Bnei Brak, Israel.

3. Upon information and belief, the Defendant, Y.F., was born in Brooklyn, New York, and is a citizen of the United States.

4.      Upon information and belief, the Defendant currently resides at 80 Meron Road, Monsey, New York 10952.

5.      The Plaintiff and Defendant were married in the city of Bnei Brak, Israel on November 2, 2011. Annexed hereto as <u>Exhibit A</u> is the redacted Marriage Certificate of the parties.

6.      Plaintiff and Defendant are the natural parents of the children, B.F., Date of Birth May 1, 2014 and M.F., Date of Birth September 11, 2015, who were born in New York. Annexed hereto as <u>Exhibit B</u> are the redacted Birth Certificates of the children.

7.      B.F., Date of Birth May 1, 2014 and M.F., Date of Birth September 11, 2015's Habitual Residence in Israel prior to Defendant's Wrongful Retention of the Children in New York.

8.      The Defendant took the children to New York in April, 2023 for Passover and has refused to return the children to Israel since then. The Defendant and the children were supposed to return before April 18, 2023.

9.      From April, 2023 until the wrongful retention of B.F., Date of Birth May 1, 2014 and M.F., Date of Birth September 11, 2015 by Defendant, B.F., Date of Birth May 1, 2014 and M.F., Date of Birth September 11, 2015, habitually resided with Plaintiff in Bnei Brak, Israel.

10.      The Hague Convention applies where a child under the age of sixteen (16) years has been removed from his or her habitual residence in breach of rights of custody of a Plaintiff, which the Plaintiff had been exercising at the time of the wrongful removal or wrongful retention of the child. Convention, Article 4.

11.      B.F., Date of Birth May 1, 2014 is now nine (10) years old and M.F., Date of Birth September 11, 2015, is now eight (9) years old.

12. Prior to the wrongful retention of B.F., Date of Birth May 1, 2014 and M.F., Date of Birth September 11, 2015, by Defendant in the State of New York commencing in April, 2023, B.F., Date of Birth May 1, 2014 and M.F., Date of Birth September 11, 2015, were habitual residents of Israel within the meaning of the Hague Convention, residing with his natural mother in Bnei Brak, Israel.

C. Plaintiff's Exercise of Rights of Custody over B.F., Date of Birth May 1, 2014 and M.F., Date of Birth September 11, 2015, Prior to Defendant's Wrongful Retention of the Child

13. Plaintiff has valid rights of custody over B.F., Date of Birth May 1, 2014 and M.F., Date of Birth September 11, 2015, under Israel law.

14. Plaintiff was exercising valid rights of custody over B.F., Date of Birth May 1, 2014 and M.F., Date of Birth September 11, 2015 in Bnei Brak, Israel, within the meaning of Articles Three and Five of the Hague Convention, prior to the wrongful retention of B.F., Date of Birth May 1, 2014 and M.F., Date of Birth September 11, 2015 by Defendant in New York commencing in April. 2023.

D. Defendant's Wrongful Retention of B.F., Date of Birth May 1, 2014 and M.F., Date of Birth September 11, 2015

15. Plaintiff agreed to allow B.F., Date of Birth May 1, 2014 and M.F., Date of Birth September 11, 2015 to visit with Defendant in the United States in April, 2023, with the agreement with Defendant that B.F., Date of Birth May 1, 2014 and M.F., Date of Birth September 11, 2015, would return to Plaintiff in Bnei Brak, Israel in April, 2023.

16. Defendant has wrongfully retained B.F., Date of Birth May 1, 2014 and M.F., Date of Birth September 11, 2015 in the United States in violation of the Hague Convention, and has

failed to return B.F., Date of Birth May 1, 2014 and M.F., Date of Birth September 11, 2015, to Plaintiff in April, 2023 as agreed, notwithstanding Plaintiff's requests.

17.     Defendant continues to wrongfully retain B.F., Date of Birth May 1, 2014 and M.F., Date of Birth September 11, 2015, in the United States, despite requests and efforts on Plaintiff's part to have B.F., Date of Birth May 1, 2014 and M.F., Date of Birth September 11, 2015, returned to Israel.

18.     Defendant also continues to wrongfully obstruct Plaintiff's access to B.F., Date of Birth May 1, 2014 and M.F., Date of Birth September 11, 2015 in New York.

19.     Plaintiff filed an Application with the Central Authority of the Official Solicitor's Office in Israel on November 15, 2023, requesting that the Central Authority act on Plaintiff's behalf to secure the return of B.F., Date of Birth May 1, 2014 and M.F., Date of Birth September 11, 2015, to Plaintiff in Israel. Annexed hereto as Exhibit C is the application of the Plaintiff.

20.     The International Child Abduction and Contact Unit of the Official Solicitor's Office in Bnei Brak, Israel issued a letter directed to the United States Department of State, Office of Children's Issues, on July 6, 2022, transmitting Plaintiff's Application. Annexed hereto as Exhibit D is the letter sent to Defendant from the United States Department of State.

21.     Defendant has frustrated Plaintiff's efforts to secure the return of B.F., Date of Birth May 1, 2014 and M.F., Date of Birth September 11, 2015 to Israel, by relocating without providing notice to Plaintiff of Defendant's or B.F., Date of Birth May 1, 2014 and M.F., Date of Birth September 11, 2015.

22.     Defendant has further acted to obstruct and restricting Plaintiff's telephone communications with B.F., Date of Birth May 1, 2014 and M.F., Date of Birth September 11,

2015, including by recently disconnecting the telephone number Plaintiff was using to communicate with B.F., Date of Birth May 1, 2014 and M.F., Date of Birth September 11, 2015.

23.     Upon information and belief, Defendant and B.F., Date of Birth May 1, 2014 and M.F., Date of Birth September 11, 2015, are currently residing at 80 Meron Road, Monsey, New York 10952, in the State of New York, County of Rockland.

24.     Pursuant to Article 12 of the Convention, [w]here a child has been wrongfully removed or retained in terms of Article 3 and, at the date of the commencement of the proceedings before the judicial or administrative authority of the Contracting State where the child is, a period of less than one year has elapsed from the date of the wrongful removal or retention, the authority concerned shall order the return of the child forthwith.

25.     Less than one year has elapsed from the date of the Defendant's wrongful retention of B.F., Date of Birth May 1, 2014 and M.F., Date of Birth September 11, 2015, beginning on or about April 7, 2023 until the filing of this action.

26.     Defendant has wrongfully retained B.F., Date of Birth May 1, 2014 and M.F., Date of Birth September 11, 2015 in the United States away from B.F., Date of Birth May 1, 2014 and M.F., Date of Birth September 11, 2015's habitual country of residence, without Plaintiff's consent or permission, and in violation of the valid rights of custody of Plaintiff.

27.     Plaintiff is also being denied access to her children in violation of the Hague Convention, in addition to Defendant's wrongful retention of B.F., Date of Birth May 1, 2014 and M.F., Date of Birth September 11, 2015 in New York in violation of the Hague Convention.

**III.** P.F.'s Hague Convention Claim

P.F. bases her Hague Convention claim for B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE OF BIRTH SEPTEMBER 11, 2015's repatriation to ISRAEL on the above.

Specifically, she contends that, at the time Y.F. retained B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE OF BIRTH SEPTEMBER 11, 2015 in New York State (i) P.F. had established ISRAEL as B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE OF BIRTH SEPTEMBER 11, 2015's permanent home, (ii) P.F. had rights of custody to B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE OF BIRTH SEPTEMBER 11, 2015 under Israeli law (her assertion in this regard will be supported at trial by the testimony of an expert witness, Reinhard Humburg, an attorney who is admitted to practice law in ISRAEL), (iii) P.F. was exercising her right to custody of B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE OF BIRTH SEPTEMBER 11, 2015 under Israeli law, and (iv) Y.F. breached P.F.'s rights of custody, when he wrongfully retained B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE OF BIRTH SEPTEMBER 11, 2015 in the United States on April, 2023, contrary to the parties' prior agreement.

## IV. Y.F.'s Hague Convention Defenses

It is unknown what defenses the Defendant would have made. However, the Defendant is in default and has not provided any defenses in this matter.

The Defendant was served properly under the Federal Rules of Civil Procedure on August 30, 2024 by personal service and mail. See ECF 23

The legal aspects of P.F.'s Hague Convention claim and Y.F.'s defenses are addressed below.

## V. Default Should be granted to Plaintiff against Defendant

Under Rule 55(b) of the Federal Rules of Civil Procedure, where a party has applied for a default judgment, the "[district] court *may* conduct hearings or make referrals" in order to, among other things, "determine the amount of damages[,] establish the truth of any allegation by evidence[,] or investigate any other matter." Fed.R.Civ.P. 55(b)(2)(B)-(D).

<u>ARGUMENT</u>

**I.** Y.F.'S RETENTION OF B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE OF BIRTH SEPTEMBER 11, 2015 IN THE UNITED STATES in April, 2023, WAS WRONGFUL UNDER THE HAGUE CONVENTION AND ENTITLES P.F. TO JUDGMENT IMMEDIATELY REPATRIATING THE CHILDREN TO ISRAEL

The Hague Conference on Private International Law adopted the Hague Convention on the Civil Aspects of International Child Abduction in 1980. T.I.A.S. No. 11670, S. Treaty Doc. No. 99–11. In 1988, the United States ratified the treaty and passed implementing legislation, known as the International Child Abduction Remedies Act (ICARA), 102 Stat. 437, [22] U.S.C. § [9001] *et seq*.

*Chafin v. Chafin*, 133 S.Ct. 1017, 1021 (2013). The United States and TO ISRAEL have been treaty partners under the Hague Convention since December 1, 1990. U.S. Dept. of State, http://travel.state.gov/content/childabduction/english/country/hague-party-countries.html (last visited Mar. 7, 2015).

The goal of the Hague Convention is to regulate the transnational relocation of children without the consent of the other parent, "to secure the prompt return of children wrongfully removed to or retained in any Contracting State and to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." *Chafin*, 133 S.Ct. at 1021 (citations omitted).

Article 3 of the Convention provides that the removal or the retention of a child is to be considered wrongful when it is in breach of rights of custody attributed to a … [parent], either jointly or alone, under the law of the State in which the child was habitually resident

immediately before the removal or retention and at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

*Id.* (citations and quotation marks omitted).

To be sure, the Hague Convention is not a vehicle for determining relative parental fitness and custody rights or enforcing custody decrees rendered by a foreign country. ICARA, 22 U.S.C § 9001(b)(4) ("The [Hague] Convention … empower[s] courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody claims."); *e.g.*, *Asvesta v. Petroutsas*, 580 F.3d 1000, 1017 (9th Cir. 2009) ("[I]t is the State of habitual residence to which the child should be returned and where the ultimate merits of the custody fight are to be decided.") (citation omitted). Following repatriation, the abducting parent may commence custody litigation in the country to which repatriation is ordered; but the court directing repatriation is entirely without subject matter jurisdiction to address issues of custody, the abducting parent's ultimate right to relocate the child's residence,[1] and the child's best interests.

Under the Hague Convention and ICARA, P.F.'s cause of action for repatriation of B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE OF BIRTH SEPTEMBER 11, 2015 to ISRAEL is warranted because her situation meets four specific foundational requirements for repatriation:

---

[1] The right to relocate with a child is a component of state law custody jurisprudence. *See*, *e.g.*, *Tropea v. Tropea*, 87 N.Y.2d 727 (1996).

1. B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE OF BIRTH SEPTEMBER 11, 2015 was a habitual resident of ISRAEL immediately prior to April, 2023, when Y.F. failed to return B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE OF BIRTH SEPTEMBER 11, 2015 to ISRAEL as previously agreed;

2. Under Israeli law, Plaintiff has rights of custody to B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE OF BIRTH SEPTEMBER 11, 2015, including rights relating to the care of [B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE OF BIRTH SEPTEMBER 11, 2015] [including] … the right to determine [B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE OF BIRTH SEPTEMBER 11, 2015's] place of residence;

3. Y.F. wrongfully retained B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE OF BIRTH SEPTEMBER 11, 2015 in the United States when he failed to return B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE OF BIRTH SEPTEMBER 11, 2015 to ISRAEL on April, 2023; and

4. P.F. was exercising rights of custody to B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE OF BIRTH SEPTEMBER 11, 2015 at the time of the child's wrongful retention in the United States or would have exercised such rights but for the retention.

Each element of P.F.'s cause of action for repatriation and the expected evidence in support of the same is addressed *in seriatim* below.

**A.** B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE OF BIRTH SEPTEMBER 11, 2015 WAS A HABITUAL RESIDENT OF TO ISRAEL IMMEDIATELY PRIOR TO Y.F.'S WRONGFUL RETENTION OF THE CHILD IN THE UNITED STATES

Existing Second Circuit law defining the child's "state of habitual residence" was established in *Gitter v. Gitter*, 396 F.3d 124 (2d Cir. 2005). *Gitter* creates a two-part analysis for determining habitual residence. First, the court must first determine – as a "primary consideration" – the "shared intent of those entitled to fix a child's residence (usually the parents) at the latest time that their intent was shared." *Id.* at 134. In this regard, the child's actual location is relevant, but the parents' actual intent controls. Thus, a child might be physically present in a particular location but the child's presence at a particular location is intended by the parents to be temporary. In determining the parents' shared intent, the court is required to consider evidence of their "actions and declarations", i.e., what they did and what they said. *Id.*

Second, notwithstanding the parents' intent, the court must consider "whether the evidence unequivocally points to the conclusion that the child [has become] acclimated to [another] location …." *Id.* In other words, the reality can *possibly* trump the parents' shared intent. By way of illustration, in *Gitter* the Second Circuit wrote:

> We would be hard pressed to conclude, for example, that a child who has spent fifteen years abroad in the same State is not habitually resident there, even if the parents intended some day to [have the child] return and did not intend that the child acquire a new habitual residence.

*Id.* at 133.

In the present case, there can be no dispute that B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE OF BIRTH SEPTEMBER 11, 2015's state of habitual residence was, and continues to be, ISRAEL.

Finally, no serious claim can be made that B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE OF BIRTH SEPTEMBER 11, 2015 has somehow become "acclimated" to the United States in the two weeks between Y.F.'s retention of the child and the date P.F. filed her Hague application with the Israeli Hague Convention Central Authority.[2]

**B.** P.F. HAS RIGHTS OF CUSTODY WITH RESPECT TO B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE OF BIRTH SEPTEMBER 11, 2015 UNDER ISRAELI LAW

As stated, a "removal or … retention of a child is … wrongful" if it is in "breach of rights of custody attributed to [a parent] …, either jointly or alone, under the law of the state … [of] the [child's habitual residence]."  Hague Convention art. 3(a).  "This uniform, text-based approach ensures international consistency in interpreting the [Hague] Convention, foreclosing courts from relying on local usage to undermine recognition of custodial arrangements in other countries and under other legal traditions."  *Abbott v. Abbott*, 560 U.S. 1, 2-3 (2010).

As stated, Reinhard Humburg, an attorney admitted to practice in ISRAEL, will be called as an expert witness on P.F.'s behalf at trial.  In his pretrial declaration, Mr. Humburg explained that Israeli Civil Code § 1662(1), gives P.F. rights of custody as to B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE OF BIRTH SEPTEMBER 11, 2015  He also states that, in the present circumstances, Israeli law is that Y.F.'s determination to change B.F., DATE OF BIRTH MAY 1,

---

[2] The Hague Convention requires each signatory to establish a "Central Authority" to handle specified administrative functions concerning both "outgoing" and "incoming" cases.  *See generally* Hague Convention arts. 6, 7.

2014 AND M.F., DATE OF BIRTH SEPTEMBER 11, 2015's residence to the United States last September could not have been legally effective unless both parties had previously agreed to the change.  He stressed that, under Israeli law, if the parties disagreed about where the child should live, the dispute could have been presented to a competent Family Court in ISRAEL for determination.

**C.** AT THE TIME OF Y.F.'S WRONGFUL RETENTION OF B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE OF BIRTH SEPTEMBER 11, 2015 IN THE UNITED STATES, P.F. WAS ACTUALLY EXERCISING RIGHTS OF CUSTODY AS TO THE CHILD OR WOULD HAVE BEEN EXERCISING SUCH RIGHTS BUT FOR THE WRONGFUL RETENTION

P.F. must establish that she actually was exercising his rights of custody at the time of B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE OF BIRTH SEPTEMBER 11, 2015's retention in New York, either jointly with Y.F. or alone, or that she would have exercised those rights but for the child's wrongful retention.  The Hague Convention does not define the phrase "actual exercise."

The leading case defining the actual exercise of rights of custody is *Friedrich v. Friedrich*, 78 F.3d 1060 (6th Cir. 1996).  As explained in *Friedrich*:

[I]f a person has valid custody rights to a child under the law of the country of the child's habitual residence, that person cannot fail to "exercise" those custody rights under the Hague Convention short of acts that constitute clear and unequivocal abandonment of the child.  Once it determines that the parent exercised custody rights in any manner, the court should stop-completely[,] avoiding the question whether the parent exercised the custody

rights well or badly.  These matters go to the merits of the custody dispute and are, therefore, beyond the subject matter jurisdiction of the federal courts.

*Id.* at 1066 (citing ICARA, re-codified at 22 U.S.C. § 9001(b)(4)).

The Second Circuit has not addressed the "exercise of custody rights" issue.  However, other circuits have followed the analysis in *Friedrich*, holding that maintaining any sort of relationship with the child is sufficient.  For example:

- *In Baxter v. Baxter*, 423 F.3d 363 (3d Cir. 2005), the Third Circuit emphasized that the test for finding the non-exercise of custody rights under the Hague Convention is stringent.  The only acceptable solution, in the absence of a ruling from a court in the country of habitual residence, is to liberally find 'exercise' whenever a parent with *de jure* custody rights keeps, or seeks to keep, any sort of regular contact with his or her child …."

*Id.* at 370 (quotation marks omitted) (citing *Friedrich).*

The Fourth Circuit followed suit in *Bader v. Kramer*, 484 F.3d 666 (4th Cir. 2007), holding that  we find persuasive the nearly-universal approach taken by courts faced with the question of the exercise of custody rights, and we adopt it here.  Accordingly, we will liberally find 'exercise' whenever a parent with *de jure* custody rights keeps, or seeks to keep, any sort of regular contact with his or her child. *Id.* at 671 (quotation marks omitted) (citing *Friedrich).*

The Fifth Circuit held likewise in *Sealed Appellant v. Sealed Appellee*, 394 F.3d 338 (5th Cir. 2004), stating that "the district court erred in its conclusion that … [the] Father was *not* exercising his custody rights.  At the district court hearing, Mother conceded Father visited the children about five times a year and paid child support to her."  *Id.* at 345 (citing *Friedrich).*

To the same effect is *Walker v. Walker*, in which the Seventh Circuit held that courts will generally find exercise whenever a parent with *de jure* custody rights keeps, or seeks to keep, any sort of regular contact with his or her child.  Indeed, a person cannot fail to 'exercise' [his] custody rights under the Hague Convention short of acts that constitute clear and unequivocal abandonment of the child. *Walker v. Walker*, 701 F.3d 1110 (7th Cir. 2012)

As the Sixth Circuit has explained [in *Friedrich*], sound policy reasons support this liberal standard.  U.S. courts are not well equipped to determine whether the courts of a child's habitual residence would conclude that a parent with *de jure* custody rights has nevertheless forfeited those rights because he or she was not acting sufficiently like a custodial parent.  Moreover, any determination that a parent has failed to behave in a sufficiently parent-like fashion comes dangerously close to an adjudication on the merits of the parents' custody dispute, which (to repeat) is something the Convention expressly reserves for the courts of the child's habitual residence. Finally, the confusing dynamics of domestic strife make it difficult to assess adequately the acts and motivations of a parent. *Id.* at 1121 (citations and quotation marks omitted) (citing *Friedrich*).

P.F. was B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE OF BIRTH SEPTEMBER 11, 2015's full-time caretaker.  Under the *Friedrich* analysis, she was indisputably exercising rights to custody as to B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE OF BIRTH SEPTEMBER 11, 2015 at all relevant times as a matter of law.  Any claim by Y.F. that P.F. was not exercising rights of custody would be specious and without any basis whatsoever in fact or law.

**D.** Y.F. WRONGFULLY RETAINED B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE OF BIRTH SEPTEMBER 11, 2015 IN THE UNITED STATES WHEN HE FAILED TO RETURN THE CHILDREN TO ISRAEL ON APRIL, 2023

The Hague Convention expressly proscribes a child's wrongful "removal" from his or her state of habitual residence or "retention" in a foreign country. Hague Convention art. 3. A wrongful retention in a foreign country takes place when the left-behind parent consents to an overseas visit or trip for a specific period but not to a permanent removal. "[T]he wrongful retention begins when the agreed date [of return] passes …." *Chechel v. Brignol*, No. 5:10-CV-164-OC-10GRL, 2010 WL 2510391, at *7 (M.D. Fla. June 21, 2010) (citations omitted); *see also*, *e.g.*, *Mitsuing v. Lowry*, No. 4:09-CV-02124ERW, 2010 WL 1610418, at *10 n.5 (E.D. Mo. April 21, 2012) ("The Court notes that Mother is asserting wrongful retention in violation of the Hague Convention, and not wrongful removal. This is presumably because when C.L. was removed from Canada to the United States by Grandfather and Grandmother, they had the express permission of both Mother and Father.").

Here, as evidenced by P.F.'s July 28, 2014, letter to Y.F., she consented to B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE OF BIRTH SEPTEMBER 11, 2015 visiting his father in New York, but only between July 28, 2014, and April, 2023. When Defendant failed to return B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE OF BIRTH SEPTEMBER 11, 2015 to ISRAEL on April, 2023, B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE OF BIRTH SEPTEMBER 11, 2015's wrongful retention in the United States began.

**II.** P.F. DID NOT CONSENT TO B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE OF BIRTH SEPTEMBER 11, 2015'S WRONGFUL RETENTION IN THE UNITED STATES OR MANIFEST A SUBJECTIVE INTENT THAT HE REMAIN IN THE UNITED STATES THEREAFTER

"[A] district court is not bound to return a wrongfully removed or retained child if the Defendant demonstrates by a preponderance of the evidence that the Plaintiff had consented to or subsequently acquiesced in the removal or retention." *Mota v. Castillo*, 692 F.3d 108, 117 (2d Cir. 2012) (citing Hague Convention, art. 13(a) and ICARA, re-codified at *22* U.S.C. § 9003(e)(2)(B)). The issue is "the subjective intent of the parent who is claimed to have acquiesced." *Baxter*, 423 F.3d at 371; *accord In re Kim*, 404 F. Supp. 2d 495, 516-17 (S.D.N.Y. 2005).

Here and as explained earlier, there is no evidence that the Plaintiff agreed to allow the Defendant to remain in the United States for a long period of time beyond the agreed few weeks vacation in April, 2023.

**III.** Default Should be granted to Plaintiff against Defendant

The Second Circuit  In permitting, but not requiring, a district court to conduct a hearing before ruling on a default judgment, Rule 55(b) commits this decision to the sound discretion of the district court. We therefore review the District Court's decision for "abuse of discretion." Finkel v. Romanowicz, 577 F.3d 79 (2d Cir., 2009) citing *Sims v. Blot,* 534 F.3d 117, 132 (2d Cir., 2008)

In this case, the Defendant was properly served and has refused to appear before this Honorable Court or file paperwork in this case. See ECF 23.

The Eleventh Circuit has explained that granting an unopposed motion is similar to granting a default judgment against a defendant who fails to respond. *Hosseinzadeh v. Green Point Mortg. Funding, Inc.*, 577 F. App'x 925, 929 (11th Cir. 2014) citing Fed. R. Civ. P. 55.

And when a party defaults, [he or she], admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (alterations added) (cleaned up). Llanso v. Rivers, Slip Copy2024 WL 776021 (SDFL, 2024).

However, conclusions of law are to be determined by the court. *Mierzwicki v. CAB Asset Mgmt., LLC*, No. 14-61998, 2014 WL 12488533, at 1 (S.D. Fla. Dec. 30, 2014).

Furthermore, the Eastern District of New York has ruled in a Hague Convention case that

> [F]or petitioner to prevail on her claim, she must establish by a
> preponderance of the evidence—or, where as here, defendant
> has defaulted, establish with facts alleged in her petition—that (1)
> the child was habitually resident in one country; (2) petitioner had
> custody rights under the law of the place of habitual residence, and
> was exercising those rights at the time of the removal or retention;
> and (3) the removal or retention was in breach of petitioner's custody
> rights.

Aguirre v. Calle, 2008 WL 4461931, (EDNY, 2008) citing *Villegas Duran v. Arribada Beaumont,* 534 F.3d 142, 147 (2d Cir.2008). See also 42 U.S.C. § 11603(e)(1)(A); *Gitter v. Gitter,* 396 F.3d 124, 130–31 (2d Cir.2005).

As the Eastern District stated, in this case, the Plaintiff has sufficiently alleges these three elements in her petition.

I.   That Israel is the habitual residence of the children.

The Court will find that the children were living for many years in Israel with both parents before the April, 2023 abduction.

II.  Plaintiff has a right to custody of the children.

Hague Convention, Art. 3. Article 5 of the Hague Convention simply defines "rights of custody" as any "rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence.

In this case, no other Court has decided the issues of these children to decide the rights between the Plaintiff and Defendant and therefore, both parties have equal rights to the children.

As stated previously, the parties were living together in Israel when the Defendant unilaterally stayed in the United States since 2023.

III. Wrongful Retention

Finally, petitioner must establish that respondent's retention has breached petitioner's right. Hague Convention, Art. 3; *see also* <u>*Laguna v. Avila,* 2008 WL 1986253, (EDNY, 2008)</u>.

Similar to the *Aguirre v. Calle* facts, the Defendant was to bring the children to the United States for a few weeks and then return. Sadly, the Defendant chose not to and has wrongfully kept the children from their mother, the Plaintiff all of this time.

**IV.** Defendant should be responsible for attorneys fees and costs along with any costs for returning the children to Israel.

In this case, the only damages are for costs of bringing this case against the Defendant and the time taken by counsel to have to bring this Hague Convention case based on the Respondent's wrongful actions.

Regarding my qualifications, I am admitted in the State of New York and primarily practice in the area of matrimonial law and regularly appear before the courts of this State and have worked on multiple Hague Convention cases in the Eastern District of New York Federal Court.

I have over 12 years of experience in the field of Matrimonial law and am a member of the New York State Bar Association, Brooklyn Bar Association and have been recognized by Super Lawyers Magazine as amongst the top matrimonial lawyers in the New York Metro region for more than approximately seven (7) years.

I have conducted numerous trials and hearings in the field of divorce litigation over financial and custodial matters as well as multiple Hague Convention trials in New York Federal Courts. The Plaintiff is paying for my services partially but I have not been fully paid at this time. My hourly rate which, at $600.00 per hour, I submit, is more than reasonable for matters of this sort in the local area, is requested to be proper.

A number of hours have already been spent on this matter, drafting pleadings; meeting with our client; writing to the Defendant's counsel, preparing a net worth statement and drafting this motion.

A reasonable hourly rate is the rate prevailing in the [relevant] community for similar services by lawyers of reasonably comparable skill, experience, and reputation. Juscinska v. Meson Sevilla, Ltd., No. 19 Civ. 5284, 2021 WL 706548, at *1 (S.D.N.Y. Feb. 23, 2021).

In this case, I have done approximately 20.6 hours of work which I would argue, compared to the amounts charged in caselaw, is de minimus for a case like this.

<u>CONCLUSION</u>

P.F.'s Petition for repatriation of B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE OF BIRTH SEPTEMBER 11, 2015 to ISRAEL, pursuant to the Hague Convention, should be granted "expeditiously." Hague Convention art. 11. This would simultaneously protect B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE OF BIRTH SEPTEMBER 11, 2015's interest in having the courts in ISRAEL – his state of habitual residence – determine the parties' underlying custody dispute and vindicate important treaty obligations of the United States concerning children, such as B.F., DATE OF BIRTH MAY 1, 2014 AND M.F., DATE OF BIRTH SEPTEMBER 11, 2015, who are wrongfully retained in the United States. As detailed above, Y.F. cannot establish a basis for proceeding otherwise.

In addition, P.F. is presumptively entitled to an award for the reasonable "costs and fees" she incurred in prosecuting this action. ICARA, 22 U.S.C. § 9007(b)(3) ("Any court ordering the return of a child pursuant to … section 11603 of this title *shall order* the Defendant to pay necessary expenses incurred by … the Plaintiff, including court costs, [and] legal fees[] … during the course of … the action, and transportation costs related to the return of the child, *unless the Defendant establishes that such order would be clearly inappropriate*.") (emphasis added).

The District Court, as the court ordering the return of the child, is responsible in the first instance for determining what costs, if any, should be assessed" at the end of the case and after any appellate remedies are exhausted. *Hollis v. O'Driscoll*, 739 F.3d 108, 113 (2d Cir. 2014). P.F. will seek such at this time.

In this case, $16,100.00 dollars in fees and time has been spent on this case and it is requested that said sum be repaid with interest by the Defendant to counsel for the Plaintiff. Annexed hereto as Exhibit E are the invoices sent to my client.

The work done included but not limited to conferences with my client, phone conferences with counsel for the father for the Defendant's other case, speaking to the State Department about the instant matter and many other issues.

Dated: Woodmere, New York
            November 15, 2024

The Law Office of Menachem White, PLLC

By *Menachem White*
    Menachem White, Esq.

*Attorneys for Plaintiff*

4 Brower Avenue, Suite 3
Woodmere, New York 11598
(516) 504-4101
Mwhite@wwlgny.com

UNITED STATES DISTRICT COURT                    Case No.: 24-CV-02333 (PMH)
SOUTHERN DISTRICT OF NEW YORK

---

P.F.,

                Plaintiff,

      – against –

Y.F.,

                Defendant,

---

ORDER TO SHOW CAUSE WITH
ATTACHED MEMORANDUM OF LAW

---

Law Office of Menachem White, PLLC
By Menachem White, Esq.
Attorney(s) for Plaintiff
4 Brower Avenue, Suite 3
Woodmere, New York 11598
(516) 504-4101

---

To:                                        Signature (Rule 130-1.1-a)

                                  *Menachem White*
                                MENACHEM WHITE, ESQ.

Attorney(s) For Plaintiff              Service of a copy of the within is hereby admitted.
                                        Dated:

---

PLEASE TAKE NOTICE:

[]     NOTICE OF ENTRY

That the within is a (certified) true copy of a duly entered in the office of the clerk of the within named court on

[] NOTICE OF SETTLEMENT

Dated:

                                        Yours, etc.