UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
In the Matter of B.F. and M.F.,         )
                                        )
       P.F.                             )     No. 7:24-cv-02333-PMH
                                        )
              Petitioner,               )
                                        )
vs.                                     )
                                        )
       Y.F.                             )
                                        )
              Respondent.               )
_____ )

### RESPONDENT'S MOTION SEEKING AN *IN CAMERA* INTERVIEW OF THE SUBJECT CHILDREN

Michael Banuchis, an attorney duly admitted to practice before this Court, respectfully submits this memorandum of law in support of the Motion requesting that the subject Children be interviewed by this Court *in camera*.

### I.  BACKGROUND[1]

In April 2023, Respondent Yakov Felberbaum left an instable and abusive home with Petitioner Perl Felberbaum in Israel with their two children, B.F. and M.F.[2] (collectively the "Children") to come to New York. The Children have been living and thriving in New York ever since.

The parties were married on November 2, 2011, in Bnei Brak, Israel. In October 2012, the Parties relocated to the United States, establishing their home and starting a family in New York. From 2012 through 2019, the family resided in New York. The parties' first child, B.F. was born

---

[1]   A more detailed background is set forth in Respondent's Proposed Findings of Fact and Conclusions of Law, filed on August 15, 2025 (ECF No. 84).
[2]   The subject children are referred to by their initials.

1

on May 1, 2014, followed by the birth of M.F. on November 9, 2015. Both Children were born in New York.

In July 2019, the family temporarily relocated to Israel. The parties had agreed that their stay in Israel was for a trial period and on a conditional basis. When the COVID-19 pandemic began, the family returned to New York for a few months. Prior to traveling back to Israel, the Parties executed an arbitration agreement on May 24, 2020 in New York. Under the terms of the agreement, Respondent consented to return to Israel with the Children solely on a trial and conditional basis.

On August 3, 2020, Petitioner served Respondent with a pre-divorce summons in Jerusalem Rabbinical Court. Along with the pre-divorce summons was a travel restriction imposed on Respondent by Petitioner, preventing him from traveling outside of Israel without Petitioner's consent. The parties continued working on their marriage for the sake of the Children until approximately September 2022 when they ultimately decided to separate.

On April 4, 2023, with Petitioner's consent, Respondent brought the Children to New York for the Passover holiday. During this trip, Respondent was hospitalized due to a flare up of his Crohn's disease, resulting in an extension of the trip. However, throughout this period, Petitioner disposed of all of Respondent's belongings, moved out of the family home and moved to a different district in Israel.

On March 27, 2024, Petitioner filed a petition in this Court under the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, art. 13(b), T.I.A.S. No. 11670, 1343 U.N.T.S. 89, *reprinted in* 51 Fed. Reg. 10,494 (Mar. 26, 1986) ("Hague Convention"), implemented in the United States through the International Child Abduction Remedies Act, 22 U.S.C. § 9001 *et seq.* (formerly codified at 42 U.S.C. § 11601 *et seq.*)

("ICARA"), seeking return of the Children to Israel (the "Petition") (ECF No.1). Ms. Felberbaum claims that the Children have been wrongfully retained in the United States from Israel.

The parties' minor children have relevant testimony concerning their time residing in Israel and will be able to testify to facts related to Petitioner's claims and Respondent's affirmative defenses, including but not limited to habitual residence, mature age objection and Article 13(b) grave risk of harm defense. The Children have expressed to Respondent their wish to share with the Court the traumatic experiences they endured in Israel and to convey their strong desire to remain in the United States rather than return to the Petitioner in Israel.

Additionally, Respondent respectfully requests that the children's interpreter, Rabbi Unger, be present during the *in-camera* interview to provide interpretation services (given that the children are more comfortable speaking in Yiddish), and emotional support to the children, who remain hesitant to discuss their traumatic experiences with individuals that they do not know well.

## II. ARGUMENT

Courts have the discretion to interview children *in camera* in Hague Convention cases. Courts have considered the subject children's testimony in cases such as this one involving the "mature age" exception (*Falk v. Sinclair,* 2009 WL 4110757 (D. Me. 2009)); habitual residence (*Karkkainen v. Kovalchuk*, 445 F.3d 280 (3d Cir. 2006)); and the "grave risk" exception (*Blondin v. Dubois*, 238 F.3d 153 (2d Cir. 2001)).

To that point, Article 13 of the Hague Convention authorizes a court to "refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views." The Respondent has the burden of establishing this by a preponderance of the evidence. 22 U.S.C. § 9003(e)(2)(B). Whether a child is mature enough to have its views considered is a factual finding.

The drafters of the Hague Convention intentionally did not include a minimum age and left this issue to the discretion of the courts. It is therefore important to conduct a fact-finding inquiry as to the child's wishes not only for the purposes of Article 13, but also for determining whether the children are well settled in the United States.

Just as the Convention provides no objective criteria as to the minimum age at which a child's objections ought to be considered, it provides no criteria to assess a child's "maturity." Courts have used various methods to make these determinations, including conducting *in camera* interviews. Moreover, it would be highly prejudicial to Respondent to deny him the opportunity to elicit such evidence and to present it to the court.

*In camera* interviews of children are frequently used by courts to ascertain the children's age, maturity, and stated objections. *See, e.g.*, *Tann v. Bennett,* 648 F.App'x 146 (2d. Cir. 2016); *de Silva v. Pitts*, 481 F.3d 1279 (10th Cir. 2007); *Vasconcelos v. Batista,* 512 F.App'x 403 (5th Cir. 2013); *Haimdas v. Haimdas*, 720 F. Supp. 2d 183 (E.D.N.Y. 2010); *Trudrung v. Trudrung*, 686 F. Supp. 2d 570 (M.D.N.C. 2010); *Lieberman v. Tabachnik*, 625 F. Supp. 2d 1109 (D. Colo. 2008); *Diaz Arboleda*, 311 F. Supp. 2d 336; *Andreopoulos v. Nickolaos Koutroulos,* No. 09-cv-00996 WTD-KMT, 2009 WL 1850928 (D. Colo. 2009); *Laguna v. Avila*, No. 07-CV-5136 (ENV), 2008 WL 1986253 (E.D.N.Y. 2008); *Di Giuseppe v. Di Giuseppe*, No. 07-CV-15240, 2008 WL 1743079 (E.D. Mich. 2008); *McClary v. McClary*, No. 3:07-cv-0845, 2007 WL 3023563 (M.D. Tenn. 2007); *Kofler v. Kofler*, No. 07-5040, 2007 WL 2081712 (W.D. Ark. 2007) (unreported disposition); *Yang v. Tsui* (*Yang II*), 499 F.3d 259 (3d Cir. 2007).

It is considered a fundamental human right of a child to have his or her voice heard in matters that affect their well-being, including in connection with proceedings initiated under the Hague Convention. Indeed, *The Judges' Newsletter on International Child Protection* – a biannual

4

publication of the Permanent Bureau of the Hague Conference on Private International Law – devoted its entire 2018 issue (referred to herein as "Judges' Newsletter") to the topic of "The Child's Voice." The newsletter is available at https://assets.hcch.net/docs/a8621431-c92c-4d01-a73c-acdb38a7fde5.pdf.

The Permanent Bureau's Forward to the Judges' Newsletter explains that: "Nowadays, most judicial and administrative authorities are also obliged in any proceedings affecting the child to apply Article 12 of the UNCRC [the U.N. Convention of 20 November 1989 on the Rights of the Child], which provides as follows:

> 1. States Parties shall assure to the child who is capable of forming his or her own views the right to express those views freely in all matters affecting the child, the views of the child being given due weight in accordance with the age and maturity of the child.
> 2. For this purpose, the child shall in particular be provided the opportunity to be heard in any judicial and administrative proceedings affecting the child, either directly, or through a representative or an appropriate body, in a manner consistent with the procedural rules of national law."

The Permanent Bureau further explains that: "As a result, children should be given the opportunity to be heard in any return proceedings under the 1980 Convention, and not only in proceedings limited to a defence under Article 13(2).

The UK Supreme Court has considered the issue extensively, particularly in reference to the issue of acclimatization. *See for example Re LC (Children)* [2014] UKSC 1, [2014] also available at https://www.incadat.com/en/case/1256, in which Lady Hale stated that, in determining the extent to which a child is integrated into a specific place of residence, a consideration of objective factors alone will provide an inherently incomplete picture, since the voice and perceptions of the individual child must also be considered. She explained that:

> "In the case of these three children, as of others, the question is the quality of their residence, in which all sorts of factors may be

5

> relevant. Some of these are objective: how long were they there, what were their living conditions while there, were they at school or at work, and so on? But subjective factors are also relevant: what was the reason for their being there, and what were their perceptions about being there? I agree with Lord Wilson (para 37) that "wishes", "views", "intentions" and "decisions" are not the right words, whether we are considering the habitual residence of a child or indeed an adult. It is better to think in terms of the reasons why a person is in a particular place and his or her perception of the situation while there – their state of mind. All of these factors feed into the essential question, which is whether the child has achieved a sufficient degree of integration into a social and family environment in the country in question for his or her residence there to be termed "habitual".....

The children are the best source of information as to the strength and nature of their attachments to New York and Israel. If children clearly exhibited distress and trauma due to domestic violence exposure or direct abuse by the Petitioner, as is the case here, and removal from that environment has resulted in positive changes in the children's behaviors, such circumstances are also relevant to the children's acclimatization within the meaning of the Convention. *In re Lozano*, 809 F. Supp. 2d 197, 231 (S.D.N.Y. 2011), *aff'd sub nom. Lozano v. Montoya Alvarez*, 697 F.3d 41 (2d Cir. 2012), *aff'd*, 134 S. Ct. 1224 (2014). Moreover, even where a child has been found to not be sufficiently mature for an Article 13 defense courts have found that a child's expressed wishes are relevant because the very expression of such wishes reflect the degree of his acclimatization to the place he is found. *Blackledge v. Blackledge,* 866 F.3d 169.

      **i.**      **The Children Can Speak to All Three Affirmative Defenses.**

An *in camera* interview would provide evidence relevant to Petitioner's claims and Respondent's affirmative defenses, including habitual residence, the Article 13 mature wishes defense, and the Article 13(b) grave risk defense. Relevant to the mature wishes defense, the children's wishes can be the sole reason that a court refuses to order the return of children to their habitual residence. *See Blondin v. Dubois*, 189 F.3d 240, 247 (2d Cir.1999) (internal citations

omitted). In the instant action, both children express a strong desire to remain in New York and fundamentally object to returning to Israel.

Courts routinely permit children to testify in Hague Convention proceedings and then weigh their maturity and capacity when considering the value of their statements. *See, e.g., Falk v. Sinclair*, 2009 WL 4110757, at *2 (D. Ct. Maine 2009) ("There is ample precedent for the taking of testimony from a child of the same approximate age as this child [eight years old], on the basis of which the questions of the child's maturity, and any weight to be given to his or her testimony, then are decided."); *Anderson v. Acree,* 250 F.Supp.2d 876, 882–84 (S.D. Ohio 2002) (after taking testimony from eight-year-old, court concluded that she was sufficiently mature to take her views into consideration, but did not rely solely on them in reaching decision not to repatriate her). This testimony is taken *in camera* as detailed above.

The Children are of sufficient age for their views to be considered. *See Mendez Lynch v. Mendez Lynch*, 220 F. Supp.2d 1347, 1362 (M.D. Fla. 2002) (concluding that views of nine-year-old child should be considered); *Blondin v. Dubois,* 238 F.3d 153, 167 (2d Cir. 2001) (affirming district court's finding that eight year old was sufficiently mature for the court to consider his view); *Escobar v. Flores,* 183 Cal.App.4th 737, 750-51, 107 Cal.Rptr.3d 596 (Cal. App. 3 Dist. 2010) (nine year old child who was extremely communicative and was under no undue influence demonstrated sufficient age and maturity to take into account his objection); *Bonilla-Ruiz v. Bonilla*, 2004 WL 2883247 (Mich. 2004) (an 8-year old's objections were enough to require dismissal of Hague abduction case.); *Porretti v. Baez*, No. 19-CV-1955, 2019 WL 5587151, *1, *8–9 (E.D.N.Y. Oct. 30, 2019) (9 and 14 years old); *Valles Rubio v. Veintimilla Castro,* No. 19-CV-2524(KAM)(ST), 2019 WL 5189011, at *20 (E.D.N.Y. Oct. 15, 2019), aff'd, 813 F. App'x 619 (2d Cir. 2020) (nine year olds wishes considered).

Moreover, in *In re Ochoa v. Perez,* No. 24 CV 4736 (NSR), 2025 WL 2172646 (S.D.N.Y. July 31, 2025), the Honorable Judge Roman in the Southern District of New York denied the Petitioner's Verified Petition For Return to Mexico after conducting a five-day trial and an *in-camera* interview of the subject children (age 4 and 11). In that matter, the older child (age 11) objected to being returned to Mexico. *Id* at *5. The court concluded that "[the child] was able to distinguish between right from wrong, and truth from fiction" and that she "was remarkably bright, speaking to her favorite courses in school, her love for her sister, and her dreams of being either a doctor or a veterinarian." *Id.* The court held that the child was "of sufficient age and maturity where it is reasonable to take into consideration her objections to repatriation." *Id* at *6.

Professor Elisa Perez-Vera, in her Explanatory Report, states that the "child's views concerning the essential question of its return or retention may be conclusive, provided it has, according to the competent authorities, attained an age and degree of maturity sufficient for its views to be taken into account. In this way, the Convention gives children the possibility of interpreting their own interest." She goes on to say that "it would be very difficult to accept that a child of, for example, fifteen years of age, should be returned against its will." Explanatory Report by E. Perez-Vera. Hague Conference on Private International Law, Actes et documents de la Quatorzieme Session, Vol. III, 1980.

The issue of courts' reticence to separate siblings is also relevant to the mature objection analysis. If the Court finds that one child should not be returned to Israel due to his objection to doing so, then is should deny the petition with respect to both Children so as to avoid separating them. *See, e.g.*, *Leonard v. Lentz*, 297 F. Supp. 3d 874, 897 (N.D. Iowa 2017) (finding that separating siblings in context of Hague proceeding would be "cruel," and the court was "unwilling to subject the children to such cruel treatment.")

8

By interviewing the Children directly, this Court will be in the best position to ascertain their reasons for objecting to being returned to Israel. If, in fact, their objections include the severe trauma they suffered in Israel and reasonable fears they had of returning, then this Court should give the Children an opportunity to express their own desires.

### ii. The Parties and Counsel Should Not Be Present During the *In Camera* Interview.

Interviewing a child *in camera* on the record but outside the presence of the parties and their respective counsel is common practice in Hague Convention cases. *See Haimdas v. Haimdas,* 720 F. Supp. 2d 183, 187 (E.D.N.Y.), aff'd, 401 F. App'x 567 (2d Cir. 2010). The Haimdas court went so far as to include a footnote that "This procedure is consistent with those adopted by district courts in Hague Convention cases. *See, e.g., Matovski v. Matovski,* No. 06 Civ. 4259, 2007 WL 2600862, at *1 & n. 2 (S.D.N.Y. Aug. 31, 2007); *Koc v. Koc,* 181 F.Supp.2d 136, 144 & n. 10 (E.D.N.Y.2001)."; *see also Mertens v. Kleinsorge-Mertens*, 157 F. Supp. 3d 1092, 1100 (D.N.M. 2015) (collecting cases regarding in camera testimony procedure); *Luis Ischiu v. Gomez Garcia*, 274 F. Supp. 3d 339, 342 (D. Md. 2017) (court interviews child in camera on the record).

"On the record" in Hague cases typically means available to the parties rather than being sealed. *See McElligott v. McElligott,* No. CV233175RKRLS, 2023 WL 5932947, at *2 n.4 (D.N.J. Sept. 12, 2023) ("The Court ordered that the [in camera] interview transcript be made part of the record, made available to the parties after the close of evidence in order to protect the integrity of the trial testimony."); *Bhattacharjee v. Craig,* No. 4:21-CV-00826-SEP, 2021 WL 4504376, at *1 (E.D. Mo. Oct. 1, 2021) ("In order to evaluate [the child's] objection, this Court held an in-camera interview on the record with R.C. on September 9, 2021. The Court released an unofficial copy of the transcript, under seal, to counsel for both parties following the interview"); *See also Hernandez v. Cardoso,* No. 15-CV-11460, 2016 WL 3742858, at *2 (N.D. Ill. July 13, 2016), aff'd, 844 F.3d

692 (7th Cir. 2016) ("The Court informed the parties that they could file written objections to the questions posed to the minor by the Court after reviewing the transcript of the in camera proceedings."); *Smith v. Smith,* No. 4:19-CV-00784-O, 2019 WL 13201172, at *1 (N.D. Tex. Nov. 20, 2019), aff'd, 976 F.3d 558 (5th Cir. 2020) ("The record, inter alia, includes transcripts of the hearing and two transcripts of in camera interviews of two children held after conclusion of the hearing").

Respondent's counsel represented the Respondent in *Porretti v. Baez,* No. 19 CV 1955 (RJD), 2019 WL 5587151, at *1 (E.D.N.Y. Oct. 30, 2019) there, the court interviewed the children *in camera* outside the presence of counsel and the parties. The court then invited the parties to submit proposed questions for the children before the interview or propose supplemental questions after reviewing the transcript. This further demonstrates that it is not common practice to seal *in camera* interview transcripts. Courts also routinely cite *in camera* transcripts in their decisions. *See, e.g. Laguna v. Avila*, No. 07-CV-5136(ENV), 2008 WL 1986253, at *11 (E.D.N.Y. May 7, 2008) (citing in camera interview transcript) ; *Valles Rubio v. Veintimilla Castro*, No. 19 CV2524(KAM)(ST), 2019 WL 5189011, at *5 (E.D.N.Y. Oct. 15, 2019), aff'd, 813 F. App'x 619 (2d Cir. 2020) (same); *Mertens v. Kleinsorge-Mertens,* 157 F. Supp. 3d 1092, 1098 (D.N.M. 2015) (same).

### III. CONCLUSION

Respondent Yakov Felberbaum respectfully submits this Motion and its Memorandum in support and asks this Court to order an *in camera* interview of the subject Children on a date convenient to the Court, and in consideration of the Children's schedules and Rabbi Unger's schedule.

Dated: October 1, 2025
      New York, New York

                                           Respectfully submitted,

                                           /s/ Michael Banuchis
                                           Michael Banuchis
                                           Green Kaminer Min & Rockmore LLP
                                           420 Lexington Avenue, Suite 2821
                                           New York, NY 10170
                                           Tel: (212) 681-6400
                                           Fax: (212) 681-6999
                                           rmin@gkmrlaw.com

                                           *Attorneys for Respondent*
                                           *Yakov Felberbaum*