UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In the Matter of B.F. and M.F., | No. 7:24-cv-2333 (PHM) (VR) |
| PERL FELBERBAUM | |
| Petitioner, | MEMORANDUM IN SUPPORT OF MOTION TO PRECLUDE TESTIMONY AND REPORT OF EXPERTS |
| vs. | |
| YAAKOV FELBERBAUM | |
| Respondent, | |

I.  INTRODUCTION AND PRELIMINARY STATEMENT

Petitioner Perl Felberbaum moves this Honorable Court to preclude the testimony of Respondent's proffered expert witnesses, Dr. Paul Stoltzfus, Ph.D. ("Dr. Stoltzfus"), and Harry Szachtel, L.C.S.W. ("Mr. Szachtel"), pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ("*Daubert*"), *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) ("*Kumho Tire*"), and Rules 702, 703, and 403 of the Federal Rules of Evidence ("FRE").

Respondent, Yaakov Felberbaum ("Yaakov"), asserts the "grave risk" exception under Article 13(b) of the Hague Convention, claiming the Children, B.F. and M.F., suffer from Post-Traumatic Stress Disorder ("PTSD") due to the Petitioner's alleged conduct in Israel. The entirety of this defense rests upon the affidavits of Dr. Stoltzfus and Mr. Szachtel. This Motion demonstrates that the opinions of both experts are fatally flawed, rendering them inadmissible.

The methodologies employed by both Mr. Szachtel and Dr. Stoltzfus are compromised by two independent, non-curable deficiencies that violate the foundational principles of forensic evaluation and the *Daubert* requirement of reliability:

1

1.     The clinical sessions conducted by Mr. Szachtel, which form the factual genesis for both experts ultimate conclusions, were corrupted by the physical presence of the Respondent, Yaakov, in the room at a point and a Rabbi Unger for the entirety of the interview. This fact is uncontroverted and represents a profound deviation from the "standards controlling the technique's operation."

2.     Neither Mr. Szachtel nor Dr. Stoltzfus interviewed the Petitioner, Perl Felberbaum, or any reasonable, neutral third-party witness in her support network (such as her Israeli psychiatrist, Dr. Yael Ratner, M.D., or her character witness, Miriam Gross), to corroborate or contradict the Respondent's narrative. Consequently, their opinions are based on an unverified, one-sided, and advocacy-driven narrative, demonstrating a lack of "sufficient facts or data" under FRE 702(b). Nor did they rely on medical reports.

These methodological defects prevent the experts from having applied reliable principles in a reliable manner, transforming their testimony from objective specialized knowledge into unreliable, advocacy-based speculation. As the Court's gatekeeper, this Court must preclude this compromised testimony.

## II. LEGAL STANDARD FOR ADMISSIBILITY OF EXPERT TESTIMONY

A.     The Court's Unwavering Gatekeeper Role under *Daubert* and FRE 702

FRE 702, which codifies the principles of *Daubert*, empowers the trial court to serve as the gatekeeper for all expert testimony. The Court must ensure that the testimony is not only relevant, but also reliable. The burden rests squarely on the proponent (here, the Respondent) to demonstrate, by a preponderance of the evidence, that the proffered testimony satisfies the following four (4) requirements:

1. The expert's specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue;

2. The testimony is based on sufficient facts or data;

3. The testimony is the product of reliable principles and methods; and

4. The expert has reliably applied the principles and methods to the facts of the case.

*Daubert* instructs that the reliability analysis focuses on the methodology, not the ultimate conclusion. *See* 509 U.S. at 595. While the *Daubert* factors—such as testing, peer review, error rate, and general acceptance—are highly persuasive, the Supreme Court in *Kumho Tire* confirmed that the gatekeeping function applies to all specialized knowledge and requires the Court to consider whether the expert's reasoning is "sufficiently reliable to warrant admission." *See* 526 U.S. at 152. In the Second Circuit, the "focus must be solely on principles and methodology, not on the conclusions that they generate." *See United States v. Williams*, 506 F.3d 151, 161 (2d Cir. 2007). In this case, the experts' methodology—or fundamental lack thereof—is precisely what mandates exclusion. By resting their opinions on contaminated data and refusing to collect available, relevant, and contradictory data from the opposing parent, the experts have failed the most basic reliability test.

**B.**     The "Intellectual Rigor" Requirement and FRE 703's Reasonable Reliance Test

In assessing the methodology of non-scientific experts like psychologists and social workers, the ultimate question is whether the expert's analysis demonstrates the "same intellectual rigor that characterizes the practice of an expert in the relevant field." *See Kumho Tire*, 526 U.S. at 152. A critical failure of intellectual rigor occurs when an expert deviates, without justification, from established, accepted standards. The Southern District of New York has strictly enforced this requirement:

3

> The Court concludes that [doctor's] failure to follow the methodology set forth in the two research papers on which he purports to rely renders his testimony unreliable … Precedent makes clear, however, that an expert is not free to deviate—without justification—from the requirements of a methodology he claims to have followed.

See *United States v. Tuzman*, No. 17-cr-538, 2017 WL 6527261, at *16 (S.D.N.Y. Dec. 18, 2017) ("*Tuzman*").

Furthermore, under FRE 703, an expert may base an opinion on facts or data that are inadmissible only if experts in the particular field would "reasonably rely" on those kinds of facts or data. Where the underlying data is derived from a contaminated source and is inherently one-sided—as is the case here—no competent, neutral forensic professional would reasonably rely upon it for an ultimate determination, particularly in a high-stakes Hague proceeding.

C.  The Specialized Standard for Forensic Child Assessments: Preventing Bias and Contamination

Forensic psychological evaluation of a child, especially in the context of alleged trauma and parental alienation, demands a heightened standard of care to ensure neutrality. The protocols are clear: the assessment must be unbiased, comprehensive, and meticulously guarded against third-party influence. Standard practices for any credible child assessment universally prohibit the presence of an interested parent, or any third party in a room that may taint the statements of the children. As one court noted:

> Standard practices for forensic child sexual abuse assessments include interviewing children separate from parents or relatives, preventing any non-offending party from dictating why a child is being examined...

See *J.I. through Interiano v. Jefferson Parish Sch. Bd.*, No. 24-219, 2024 WL 4362985, at *6 (E.D. La. Oct. 1, 2024). The goals of this protocol are to prevent: (1) suggestion and coaching; and (2) the expert from relying on a single, uncorroborated narrative.

An expert who accepts a paid assignment to opine on a family crisis but deliberately restricts his or her data collection to one party acts as an advocate, not an expert. This bias directly violates the "sufficient facts or data" prong of FRE 702(b), necessitating exclusion.

## III. ARGUMENT

### POINT I

### THE TESTIMONY OF HARRY SZACHTEL, L.C.S.W., MUST BE PRECLUDED DUE TO FATAL METHODOLOGICAL CONTAMINATION AND LACK OF SUFFICIENT FACTS OR DATA

The testimony of Respondent's treating clinician, Mr. Szachtel is inadmissible because the data upon which he bases his opinion on "grave risk" is fundamentally compromised. His clinical observations, forming the basis of his affidavit, are non-forensic, tainted by the Respondent's presence, and derived from a deliberate, one-sided collection of facts. His methodologies are flat, flawed, and fatally defective.

**A.** Fatal Methodological Contamination: The Presence of Respondent Yaakov Violates Foundational Forensic Protocols

The Petitioner alleges that during the children's clinical sessions with Mr. Szachtel—sessions that underpin the entirety of the Respondent's trauma narrative—Yaakov was physically present in the room. This single, uncontroverted fact constitutes a fatal methodological failure that precludes Mr. Szachtel's testimony.

The presence of the Respondent—the parent against whom the Petitioner has made allegations of "drug-induced instability and manipulation"—vitiates the entire purpose of a neutral clinical assessment. This corruption directly impacts the four *Daubert* reliability factors:

1. The presence of an interested parent injects an unknown, but demonstrably high, rate of error into the clinician's behavioral and verbal observations. As courts have recognized, the presence of a third party during an evaluation has a "significant likelihood of skewing the data

obtained, and impacting the behavior and test results of the person being evaluated." *M.A.M. v. M.R.M.*, 37 Misc.3d 1232(A), at *3 (Sup. Ct. Monroe Cty. 2012). Mr. Szachtel offers no methodology to account for this inherent skewing.

2.      Mr. Szachtel's conduct directly violates the accepted "standards controlling the technique's operation" required by *Daubert*. The fundamental protocol in child assessment is to interview children "separate from parents or relatives." *J.I. through Interiano*, 2024 WL 4362985, at *6. By allowing the Respondent to dictate the clinical setting, Mr. Szachtel abandoned the necessary "intellectual rigor" required of an expert in the field of child welfare, making his testimony unreliable per *Kumho Tire*.

3.      Mr. Szachtel's observations, which form the factual basis for his conclusion that the children are "deeply traumatized by the mother's threats involving law enforcement" and "terrified of law enforcement" (Szachtel Aff., ¶ 26),[1] cannot be deemed a reliable application of clinical principles when the very environment was compromised by the subject of the trauma narrative. This deviation from protocol is exactly the type of unexcused deviation that renders testimony unreliable under *Tuzman*, 2017 WL 6527261, at *14-*16.

The fact of third-party contamination is non-curable. No amount of subsequent reliance or theoretical *post hoc* justification can purge the original data of its bias. Therefore, all opinions flowing from Mr. Szachtel's contaminated clinical sessions must be precluded.

B.      Failure to Collect Sufficient Facts or Data: Exclusion of the Mother's Perspective Vitiates Neutrality Under FRE 702(b).

Beyond the issue of contamination, Mr. Szachtel's methodology is a textbook example of bias, demonstrating a failure to rely on "sufficient facts or data" under FRE 702(b).

---

[1] The Szachtel declaration was provided to this Court directly by the Respondent in advance of the trial.

Mr. Szachtel confirms that his opinion is based on his sessions with the children and the Respondent. He did not, however, conduct any neutral outreach to the Petitioner. He was aware, or should have been aware, of the Petitioner's circumstances, including:

- Her stable life in the Bnei Brak religious community for five (5) years;
- Her successful treatment for depression;
- The fact that she has a large, loving family support system in Israel, while having no family support in New York

By deliberately ignoring these central and easily verifiable facts, Mr. Szachtel's report is not a balanced professional assessment; it is an advocacy document for the retaining party.

Indeed, the methodology of any reputable professional opining on a family dispute must include an attempt to obtain data from all primary subjects. Mr. Szachtel's decision to rely solely on the father's narrative and the children's statements (which were made in the father's presence) represents an unexcused deviation from the methodology of a neutral, objective clinician. Such a deviation, according to *Tuzman*, "renders his testimony unreliable." *See* 2017 WL 6527261, at *14-*16.

Mr. Szachtel's affidavit asserts that returning the children to the environment in which their traumatic experiences occurred would pose a "serious risk to their personal safety, psychological safety and well-being." (Szachtel Aff., ¶ 28). This conclusion is rendered hollow by the failure of "intellectual rigor." *See Kumho Tire*, 526 U.S. at 152. A reasonable clinician would understand that the children's distress could be a function of the wrongful retention itself, the parental conflict, or the father's manipulation, rather than the mother's care (or lack thereof).

By failing to interview the mother, Mr. Szachtel insulated his conclusion from challenge and failed to consider and rule out alternative causes for the children's distress, thereby confirming the lack of a reliable method.

C. <u>The Opinion's Basis is Inadmissible Hearsay, Not Reliable Data, Under FRE 703</u>

FRE 703 mandates that an expert's opinion, even if based on otherwise inadmissible data, must rely on data that experts in that field would "reasonably rely" upon. Mr. Szachtel's opinion fails this test because its foundation is contaminated, uncorroborated hearsay.

No competent professional, especially one tasked with informing a court on a matter of international law, would "reasonably rely" on the following:

1. As discussed, the children's statements were made in the presence of the interested father, which courts have held is likely to "skew the data obtained." *M.A.M. v. M.R.M.*, 37 Misc.3d 1232(A), at *3. These are not "reliable" clinical observations, but observations subject to suggestion and coercion.

2. Mr. Szachtel repeats the allegation that the mother's actions led to the children's "terrified" fear of law enforcement (Szachtel Aff., ¶ 26). However, he never sought to interview the mother to obtain her version of events or to assess whether the father's actions contributed to the children's anxiety.

By acting as a "mere conduit for inadmissible hearsay" that is inherently unreliable, Mr. Szachtel's testimony violates FRE 703. Furthermore, his testimony, which is inflammatory and unverified, risks having its probative value "substantially outweighed by their prejudicial effect," warranting exclusion under the final clause of FRE 703.

D.     Szachtel's Role as a Treating Clinician and Advocate Precludes Forensic Admissibility

Mr. Szachtel is a Licensed Clinical Social Worker whose role was therapeutic treatment, not objective forensic risk assessment. His affidavit, submitted in lieu of direct testimony, makes an ultimate legal conclusion about "grave risk."

Unlike a forensic evaluator, a treating clinician's ethical duty is to the client, which necessarily involves accepting the patient's narrative to establish rapport. This role is incompatible with the duty of an expert witness, which is to the Court and requires objective neutrality. Mr. Szachtel's affidavit confirms this advocacy, as it is derived from a compromised, client-focused relationship and omits critical, countervailing facts that he failed to investigate.

## POINT II

### DR. PAUL STOLTZFUS' OPINION FAILS THE DAUBERT RELIABILITY TEST DUE TO HIS CRITICAL FAILURE TO ADHERE TO SCIENTIFIC METHODOLOGY AND LACK OF INTELLECTUAL RIGOR

Dr. Stoltzfus, a clinical psychologist from Oregon, was retained to provide an independent forensic opinion, primarily opining that the children suffer from PTSD due to the Petitioner's care. His report is likewise unreliable because his methodology is compromised, and he fails to meet the core requirements of *Daubert* and *Kumho Tire*.

A.     Dr. Stoltzfus's Reliance on Corrupted Data is a Non-Curable *Daubert* Failure

Dr. Stoltzfus' diagnosis of PTSD is not the result of independent, reliable testing or data collection; rather, it is the fruit of the poisoned tree. His opinion is inextricably reliant upon the clinical notes and opinions of Mr. Szachtel, which, as demonstrated above, are compromised by the physical presence of the Respondent during the sessions, and the failure to interview the Petitioner. A summary of Petitioner's arguments in support of exclusion follows below.

9

1. A central requirement of any expert is that the testimony must be based on "sufficient facts or data." FRE 702(b). Dr. Stoltzfus was required, as a forensic expert, to assess the quality of the primary data sources. He failed to note, address, or control for the fact that the clinical observations underlying his PTSD diagnosis were contaminated by the Respondent's influence.

2. Dr. Stoltzfus failed to conduct any independent, standardized testing of the children to verify his diagnosis, relying instead on Szachtel's observations and the one-sided narrative provided by the Respondent. The absence of reliable testing, coupled with the reliance on contaminated source data, dramatically increases the known or potential rate of error in his diagnosis. The *Daubert* framework specifically requires the Court to assess whether the expert's theory or technique can be (and has been) tested. *See* 509 U.S. at 593. Dr. Stoltzfus' diagnosis remains untested and unverified by any accepted forensic instrument.

3. No competent forensic psychologist, applying the "same intellectual rigor" (*Kumho Tire Co.*, 526 U.S. at 152) that characterizes their field, would base a diagnosis of PTSD—a diagnosis with severe implications for a Hague determination—on data known to be collected under conditions of contamination. Dr. Stoltzfus' willingness to proceed with a diagnosis based on such a compromised foundation is an unjustified deviation from established forensic protocol, demanding preclusion under *Tuzman*.

Dr. Stoltzfus cannot be permitted to sanitize fatally flawed data and present it to the Court with the "aura of expertise" surrounding a Ph.D. His opinion on the alleged grave risk posed by the mother is fundamentally unreliable because the facts on which it is based were manufactured in a clinically compromised environment.

B.  **Abandonment of Intellectual Rigor: The Failure to Interview Petitioner, Perl Felberbaum, or Review Neutral Information**

The gravest failure of Dr. Stoltzfus is his decision to issue a forensic opinion on the ultimate issue of "grave risk" without interviewing the Petitioner, Perl Felberbaum, or any of her supporting witnesses, such as her friend Miriam Gross or her certified psychiatrist, Dr. Yael Ratner, M.D. This failure confirms that his report is not a neutral forensic assessment but a paid advocacy statement that lacks "sufficient facts or data." *See* FRE 702(b).

1. In a high-conflict custody dispute, forensic standards dictate that the expert must conduct a balanced evaluation of both parents to understand the family dynamics, assess credibility, and control for potential parental alienation or coaching. Dr. Stoltzfus, retained to assess the risk posed by the mother, deliberately excluded the mother's perspective. His opinion on the Petitioner's fitness is thus based on unverified accusations made by the Respondent, Yaakov, who has a clear motive to retain the children.

2. Dr. Stoltzfus was obligated to review all readily available information relevant to the Petitioner's fitness. He failed to do so by undertaking any effort to interview the Petitioner.

3. Dr. Stoltzfus' purposeful exclusion of the Petitioner's perspective, her treating physician's opinion, and her character witnesses is a complete failure to rely on "sufficient facts or data." His report, therefore, is not a credible assessment of the family unit but a calculated presentation of the Respondent's legal defense strategy. An expert cannot cherry-pick data to fit a predetermined conclusion and still satisfy the gatekeeping function of *Daubert*.

C.  **Failure to Test for Alternative Causation and Parental Influence Renders the PTSD Diagnosis Unreliable**

For Dr. Stoltzfus' opinion on PTSD to be reliable, he must rule out alternative, equally plausible causes for the children's reported distress.

By relying only on the Respondents' narrative, Dr. Stoltzfus failed to apply this basic scientific principle, violating the "testing" prong of *Daubert*.

1. The children have been subject to a prolonged, unlawful "wrongful retention" by their father in New York, away from their "fundamentally rooted" habitual residence in Israel for over two (2) years. The psychological distress cited by Dr. Stoltzfus could just as easily be attributed to:

   - The instability and uncertainty caused by the intercontinental abduction.

   - The intense parental conflict occurring in the New York environment, including the father's manipulation and instability.

   - The pressure of being coached or alienated by the retaining parent, especially given the contamination in Mr. Szachtel's sessions.

2. The "same intellectual rigor" required of a forensic psychologist mandates a thorough differential diagnosis to determine the true etiology of the symptoms. Dr. Stoltzfus failed to conduct this analysis, as he never interviewed the Petitioner to assess the veracity of the Respondent's claims. Had he done so, he would have been required to compare the Respondent's claims against Petitioner's. His failure to even perform this basic check reduces his differential diagnosis to an assumption, rendering his ultimate conclusion on causation—that the mother is the source of the trauma—unreliable and inadmissible.

D.  Dr. Stoltzfus' Methodology Lacks Accepted Standards and Demonstrates an Unjustified Deviation from Protocol

Dr. Stoltzfus, an Oregon-based practitioner, must demonstrate that his methodology, when applied to a complex international Hague proceeding in the Southern District of New York, meets the highest standards. His methodology fails the "standards controlling the technique's operation" factor of *Daubert* by:

1. His use of Mr. Szachtel's clinical notes, which are themselves not a forensic report and are contaminated by third-party presence, is a departure from reliable standards.

2. Dr. Stoltzfus' failure to interview the children under controlled, uncoached conditions, and his complete refusal to interview the mother, deviates from every accepted standard for conducting a neutral psychological evaluation.

This unjustified deviation from accepted protocol is a clear violation of FRE 702(c) and (d) and must result in the preclusion of his testimony.

## POINT III

**THE EXPERTS' TESTIMONY MUST BE EXCLUDED UNDER FRE 403 DUE TO UNFAIR PREJUDICE AND THE RISK OF MISLEADING THE COURT ON THE NARROW HAGUE ISSUE OF GRAVE RISK**

Even assuming, in *arguendo*, that the experts' testimony survives the methodological scrutiny of FRE 702, it must be excluded under FRE 403, which mandates exclusion where the probative value of the evidence is "substantially outweighed" by the danger of unfair prejudice, confusing the issues, or misleading the court.

The probative value of the testimony is minimal, as it is based entirely on compromised and one-sided data. The danger of unfair prejudice, however, is extreme. Allowing an expert to testify that the children suffer from PTSD and are "terrified" of their mother, all while concealing the fact that the expert failed to interview the mother, or any neutral party, or control for the father's presence during sessions, may permit this Court to be misled by the "aura of expertise."

In a Hague proceeding, the Court's inquiry is narrow, focusing only on the exceptions, not a full "best interests" determination. Presenting a diagnosis of PTSD, based on such a flawed foundation, will confuse the issue by inviting the Court to undertake a best-interests inquiry based on emotionally charged, unreliable conclusions.

The only way to mitigate the risk of the Court being unduly swayed by this advocacy-based, contaminated testimony is to preclude it in its entirety.

## IV. CONCLUSION

For the reasons set forth above, the opinions of Dr. Paul Stoltzfus and Harry Szachtel are based on a fundamentally flawed methodology, which includes the fatal, non-curable contamination of clinical sessions by the Respondent's presence and the unconscionable failure to interview the Petitioner, her certified psychiatrist, or any neutral third party. Their opinions, therefore, fail to meet the required standards of reliability and intellectual rigor under *Daubert* and FRE 702, 703, and 403.

Petitioner respectfully requests that the Court grant this Motion in its entirety, precluding the testimony of Dr. Stoltzfus and Mr. Szachtel, and schedule a *Daubert* hearing to fully address the admissibility of the proffered evidence.

Dated: Woodmere, New York
      October 24, 2025

                              Respectfully submitted,
                              /s/ Menachem White, Esq
                              Menachem White, Esq
                              The White Law Group
                              Counsel for Petitioner